# United States Court of Appeals
## For the First Circuit

No. 07-1652

ANDREW CHMIELINSKI,

Plaintiff, Appellant,

v.

COMMONWEALTH OF MASSACHUSETTS OFFICE OF THE COMMISSIONER OF
PROBATION; COMMONWEALTH OF MASSACHUSETTS TRIAL COURT; JOHN J.
O'BRIEN, Individually; ANTHONY R. SICUSO, Individually,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Lipez, and Howard,
Circuit Judges.

Mitchell J. Notis for appellant.
Sarah M. Joss, Assistant Attorney General, with whom Martha
Coakley, Attorney General, was on brief for appellee.

January 22, 2008

**LYNCH**, **Circuit Judge**.  Andrew Chmielinski, the Chief Probation Officer of the Milford, Massachusetts, District Court, was fired by the Commissioner of Probation after a hearing on charges he had abused his office.  That termination was upheld on administrative appeal to the Chief Justice for Administration and Management ("CJAM") of the Commonwealth of Massachusetts Trial Court and then to the Trial Court's Advisory Committee on Personnel Standards.

Chmielinski filed a civil rights action in federal district court alleging that his procedural due process rights had been violated.  The district court dismissed the action for failure to state a claim.  We affirm the dismissal, although our take on the case is different.  We focus on whether the initial hearing, which did not involve full trial rights, violated due process guarantees and conclude it did not.

I.

Because this appeal comes to us on a motion to dismiss, we accept all well-pleaded factual allegations in the complaint as true and view all reasonable inferences in the plaintiff's favor.  Rucker v. Lee Holding Co., 471 F.3d 6, 8 (1st Cir. 2006).

Chmielinski started working as a temporary Probation Officer for the Commonwealth of Massachusetts Trial Court in 1976.  He became a permanent Probation Officer in 1979 and worked in the Dorchester District Court until 1996.  In 1996, he was promoted to

-2-

be the Chief Probation Officer in the Milford District Court and continued in that role until his discharge on February 20, 2004.

A.        <u>Pre-termination Proceedings</u>

On April 15, 2003, Chmielinski learned that his supervisors had complaints regarding his work performance, but he did not become aware of the specific nature of the complaints. The same day, he received a letter from defendant Anthony J. Sicuso, the Deputy Commissioner/Legal Counsel of the Office of the Commissioner of Probation, stating that allegations of misconduct had been made against Chmielinski.[1]  At a meeting between Chmielinski and Sicuso on May 13, 2003, Sicuso reiterated that allegations had been made, but refused to provide any specifics to Chmielinski or his counsel.

On May 16, 2003, Sicuso provided Chmielinski with a letter stating that he had been placed on involuntary paid administrative leave effective immediately.  This letter still did not describe what the allegations were, but it informed Chmielinski that while the allegations had not been proved, Sicuso believed

---

[1]        Unfortunately, the defendants in their motion to dismiss failed to provide copies of the documents referred to in the complaint, which would have provided more context.  In reviewing a Rule 12(b)(6) motion, we may consider "documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint."  <u>Watterson</u> v. <u>Page</u>, 987 F.2d 1, 3 (1st Cir. 1993); <u>see</u> <u>also</u> <u>Beddall</u> v. <u>State St. Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998) (considering document attached to defendant's motion to dismiss).

-3-

they were "plausible." The letter also set out "directives" with which Chmielinski was ordered to comply on penalty of further disciplinary action, including that he not appear at the premises of the Milford District Court, not contact any employees or former employees of the Milford District Court, and that he "[r]efrain from all conflict, intimidating/retaliatory behavior and from any behavior which creates the appearance of conflict, of intimidation or retaliation." From the prohibitions in this letter, Chmielinski received some warning of the nature and sources of the claims against him.

During May and June 2003, a representative of the Trial Court/Commissioner of Probation investigated the allegations of misconduct against Chmielinski, which led to a report drafted by Regional Supervisor Elizabeth Slaney, at Sicuso's direction. This report contained "embedded hearsay." The complaint alleges the investigation was improper.

After the report was completed, the Trial Court/Commissioner of Probation, by letter dated September 4, 2003, charged Chmielinski with multiple acts of misconduct: (1) that Chmielinski had shoplifted on September 12, 2002; (2) that he improperly obtained a "blue light permit" and mounted the light in his personal vehicle; (3) that he made improper disclosures of court records; (4) that activities undertaken by Chmielinski relating to a speeding ticket of his brother created the appearance

-4-

of impropriety; (5) that he carried a firearm while on duty approximately four years earlier; and (6) that he was involved in improper interactions with other employees.

A two-day hearing on the allegations was conducted on January 12, 2004, and January 21, 2004, four months after the charges were made. Defendant John J. O'Brien, the Commissioner of Probation, presided over the hearing. At this hearing, Chmielinski and his counsel presented evidence on Chmielinski's own behalf and had the opportunity to question the evidence against him. The complaint alleges this was the only hearing which took place before his termination, and his only opportunity to "present evidence on his behalf or to question, other than through oral argument or written argument, the evidence, conclusions or findings" against him.[2]

On February 20, 2004, O'Brien issued his decision on the charges made against Chmielinski. While he found in favor of Chmielinski on some of the charges, he found against him on others, and ordered Chmielinski be terminated effective immediately.

B.        Chmielinski's Post-termination Appeals

On March 1, 2004, Chmielinski appealed O'Brien's decision to the CJAM pursuant to Massachusetts state law and the Trial Court's human resources policy. See Mass. Gen. Laws ch. 211B,

_____

[2]     Chmielinski alleges that at the end of the hearing it was agreed that Chmielinski's counsel would be allowed to submit a written summary of the evidence and a closing argument after receiving the transcripts of the hearing.

§ 9(xxviii) ("[T]he chief justice for administration and management shall review all appointments and dismissals governed by [applicable personnel] standards . . . for noncompliance with such standards and shall rescind any such appointment or dismissal that does not comply with said standards."); Policies and Procedures Manual of the Human Resources Department of the Administrative Office of the Trial Court § 16.600 [hereinafter Trial Court Policies and Procedures] ("Disciplinary Process For Complaints Against Probation Officers").

In his written appeal, Chmielinski alleged that the decision was arbitrary and capricious, and that the process violated his rights. He asserted that the failure to hold an evidentiary hearing on appeal was itself a violation of his rights. As to his termination hearing, he argued that his rights were violated on multiple grounds: there was no pre-hearing discovery; witnesses were not sworn; witnesses were not sequestered; various categories of evidence were improperly admitted; Sicuso's letter prohibiting contact with any coworkers resulted in preventing Chmielinski from conducting an investigation and preparing a defense; leading questions were asked of witnesses; certain of his evidence was ignored by O'Brien; the result of his hearing was predetermined; O'Brien lunched with counsel for the Trial Court/Office of the Commissioner on one of the hearing days, which was indicative of bias; and, O'Brien issued his decision only one

day after Chmielinski's counsel received a copy of the transcript of the hearing preventing counsel from making a written submission after the hearing. On August 19, 2004, the CJAM denied the appeal and upheld the termination decision.

Chmielinski then exercised his statutory right to appeal further the termination decision to the Trial Court's Advisory Committee on Personnel Standards. Mass. Gen. Laws ch. 211B, § 8 ("[If an] employee has served three full years in [an] [applicable] position, . . . he shall have the right to appear personally before the committee before said committee reaches its decision as to whether or not to affirm his removal."). Oral argument was held before the Advisory Committee on November 19, 2004, at which Chmielinski presented again his allegations of procedural inadequacies.

The Advisory Committee affirmed Chmielinski's termination and informed the CJAM by letter dated November 23, 2004. Chmielinski, through his counsel, was made aware of the Advisory Committee's affirmance by a letter dated November 29, 2004.

C.      Federal Lawsuit

On July 6, 2005, Chmielinski brought suit under 42 U.S.C. § 1983 in federal district court against the Office of the Commissioner of Probation, the Trial Court, and O'Brien and Sicuso in their individual capacities, alleging that Chmielinski's termination violated his right to procedural due process. He

sought compensatory and punitive damages from the individual defendants and reinstatement to his former position plus compensatory and punitive damages from the Commonwealth defendants.

The defendants filed a joint motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The motion to dismiss was referred to a magistrate judge, who recommended that the suit be dismissed because Chmielinski, even on the most favorable reading of the complaint, had received constitutionally adequate process.[3] The district court accepted and adopted the magistrate's recommendation granting the defendants' motion to dismiss.

## II.

Chmielinski appeals the district court's dismissal of his damages claims against the individual defendants, Sicuso and O'Brien; he does not appeal the dismissal of his claims against the

---

[3] The magistrate judge rejected the defendants' jurisdictional arguments: that the Trial Court's termination decision was a state court judgment and barred from review by the Rooker-Feldman doctrine and that the plaintiff had not exhausted his administrative remedies. The magistrate did find that Eleventh Amendment immunity barred the claims against the Commonwealth agencies.

The magistrate also rejected Sicuso's and O'Brien's contentions that they were entitled to quasi-judicial immunity, but nonetheless found that the plaintiff had failed to state a due process claim. The magistrate determined that Chmielinski's allegations fell within the ambit of the Parratt-Hudson doctrine, which provides that when a deprivation of a property interest occurs due to random and unauthorized conduct, a court must examine only the adequacy of the post-deprivation remedies. Here, the magistrate found adequate the appeals process that Chmielinski received after his termination.

Commonwealth agencies.  Our review of the district court's granting of the motion to dismiss is de novo.  Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).  In order to survive a motion to dismiss, the complaint must allege "a plausible entitlement to relief."  Id. (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007)) (internal quotation marks omitted).

A.      Jurisdiction and Immunity

The defendants made a jurisdictional argument, which was correctly rejected by the district court.  The defendants' jurisdictional argument was that the district court lacked subject matter jurisdiction because the Trial Court's termination decision was a decision of a Massachusetts court and thus is reviewable only by the Massachusetts Supreme Judicial Court.

In terminating Chmielinski's employment, the Trial Court was acting as an employer, not as a judicial body.  Chmielinski was an employee of the Trial Court, not a litigant, and at no time was his employment an issue in an action pending before the Trial Court.  The Trial Court's decision to terminate Chmielinski was the result of an administrative proceeding held in its capacity as an employer, and was not the "final judgment[] of a state court in [a] judicial proceeding[]."  D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983).  Therefore, the Rooker-Feldman doctrine, which bars lower federal courts from reviewing the decisions of state

courts, does not apply to the state court's decision.  See id.; Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923).

Defendants' argument that jurisdiction was inappropriate because the plaintiff had not exhausted his administrative remedies in the sense of pursuing a further appeal in the state court system has no merit.  The Supreme Court has made clear that exhaustion of state administrative remedies is not a prerequisite to filing an action under 42 U.S.C. § 1983.  Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982); see also Borges Colón v. Román-Abreu, 438 F.3d 1, 19 (1st Cir. 2006) (citing Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 30 (1st Cir. 1998)).[4]

B.        Due Process

It is agreed that state law gave Chmielinski, a twenty-five-year employee of the probation office with certain statutory protections, a protected property interest in his continued employment.  See Bd. of Regents v. Roth, 408 U.S. 564, 576-78 (1972).  He could not be discharged without due process, including a hearing before his termination.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–42 (1985).

---

[4]      The plaintiff's claims against the Commonwealth agencies were dismissed.  The Eleventh Amendment renders states immune from suits in federal court by private citizens.  See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Edelman v. Jordan, 415 U.S. 651, 662-64 (1974).  This situation would not preclude prospective injunctive relief against O'Brien and Sicuso if in fact plaintiff's due process rights were violated.  Ex parte Young, 209 U.S. 123, 155-56 (1908).  Here, the plaintiff did not seek prospective injunctive relief against the individual defendants.

-10-

1.      Inapplicability of the Parratt-Hudson Doctrine

The Parratt-Hudson doctrine exists to protect states from needlessly defending the adequacy of state law process when the alleged due process violation results from a deviation from that process.  See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (holding that when alleged due process violations stem from "random and unauthorized conduct," review is limited solely to the adequacy of the post-deprivation remedies); Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986).  In instances of "random and unauthorized conduct" by state officials, "additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the protected [property] interest."  Mard v. Town of Amherst, 350 F.3d 184, 193 (1st Cir. 2003).  Thus, "[w]hen a deprivation of a property interest is occasioned by random and unauthorized conduct by state officials, . . . the [Supreme] Court has repeatedly emphasized that the due process inquiry is limited to the issue of the adequacy of postdeprivation remedies provided by the state."  O'Neill v. Baker, 210 F.3d 41, 50 (1st Cir. 2000) (quoting Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992)) (alteration in original).

Before invoking the Parratt-Hudson doctrine, however, courts must give a hard look at allegations that conduct is "random and unauthorized."  See Zinermon v. Burch, 494 U.S. 113, 138 (1990) (finding that conduct could not be said to be "unauthorized" when

-11-

state had delegated broad discretion to state officials); O'Neill, 210 F.3d at 50 ("Zinermon [requires] that 'courts scrutinize carefully the assertion . . . that [state officials'] conduct is "random and unauthorized . . . ."'" (quoting Lowe, 959 F.2d at 341)).

Chmielinski's allegations all concern his January 2004 termination hearing, a hearing that was conducted in accordance with a state-law statutory and regulatory scheme. Massachusetts General Laws, chapter 276, section 98 grants the Commissioner of Probation "executive control and supervision over the probation service," under the approval and direction of the CJAM. The Trial Court has promulgated regulations pursuant to that statute which allow the Commissioner of Probation to initiate and impose discipline (including discharge) on probation officers, Trial Court Policies and Procedures § 16.600, and require that an informal hearing be held before discipline be imposed, id. § 16.300(B). Neither the statute nor the regulations set out any procedural requirements, providing only that the hearing be "informal." Thus, the hearing that Chmielinski received cannot be characterized as a deviation from the state law; it was not random and unauthorized.

2.      Adequacy of the Termination Hearing

Instead, this case is governed by the initial question of whether the termination hearing violated due process. See, e.g., Marrero-Gutierrez v. Molina, 491 F.3d 1, 8-9 (1st Cir. 2007);

-12-

Cepero-Rivera v. Fagundo, 414 F.3d 124, 134-35 (1st Cir. 2005); Mard, 350 F.3d at 189-93; O'Neill, 210 F.3d at 48-50. The Supreme Court made clear in Loudermill that when an employee is entitled to some process after termination, the purpose of the termination hearing is solely to serve as "an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." 470 U.S. at 545-46. It "need not be elaborate" as long as an employee receives (1) "oral or written notice of the charges against him," (2) "an explanation of the employer's evidence," and (3) "an opportunity to present his side of the story." Id.

Chmielinski does not contest that he received adequate notice here or that he was given an explanation of the employer's case. He was first made aware that there were allegations against him a full nine months before the hearing, and he was given the specific details of the allegations four months before the hearing took place. See Cepero-Rivera, 414 F.3d at 134 (finding less than three weeks' notice of hearing sufficient); Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10 (1st Cir. 2003) (finding two-and-a-half months' notice sufficient); O'Neill, 210 F.3d at 45, 48-49 (finding notice of hearing given only six days before hearing sufficient when employee had understood nature of allegations against her for the prior three months). Chmielinski was aware

-13-

that the hearing concerned discipline, as he had been suspended, and he appeared at the hearing with counsel and presented evidence on his own behalf. See Torres-Rosado, 335 F.3d at 10 (finding that "far more than the minimum elements" of due process were met when plaintiff was accompanied by counsel at hearing, testified, and had opportunity to present evidence).

Rather, Chmielinski's allegations of procedural due process all concern the adequacy of the hearing he was provided. The standard the defendant must meet here is not high: the U.S. Constitution requires only "some pretermination opportunity to respond." Loudermill, 470 U.S. at 542.

Most of Chmielinski's allegations are a call to transpose the procedural protections of a court of law into his termination hearing: his desire for pre-hearing discovery, his request that the witnesses be sworn and sequestered, and his assertion of various improprieties in the admission and consideration of evidence. These are easily dismissed. The termination hearing is not a court of law, and the same level of process is not required.[5] The U.S. Constitution requires only that Chmielinski was provided notice and a meaningful opportunity to respond, a requirement that was clearly met on the facts of this case. "[T]he Constitution

---

[5] "An agency's failure to follow its own rules may be significant in administrative law, but the federal Due Process Clause does not incorporate the particular procedural structures enacted by state or local governments; these claims should be pursued, if at all, under [state] law." Torres-Rosado, 334 F.3d at 10 (citing O'Neill, 210 F.3d at 49 n.9).

-14-

requires only an initial check against erroneous decisions, not that the state follow best practices." O'Neill, 210 F.3d at 49 n.10.

Chmielinski argues he had no meaningful opportunity to respond because he was not provided pre-hearing discovery. So long as he had adequate notice, the state was not required to give him pre-hearing discovery. His real claim is that his employer deprived him of the opportunity to do his own investigation to bolster his defense. He argues the letter he received from Sicuso ordering him to stay away from the Milford District Court and to refrain from contacting court employees precluded his attorney from contacting people.

There are several responses. The first is that each of the allegations involved Chmielinski's own conduct, known to him. From this he could testify and assemble a defense. Second, nothing on the face of the letter prevented Chmielinski's counsel from contacting witnesses. If Chmielinski had some doubt about the scope of the prohibition, he should have, but did not, seek clarification before the hearing.

Regardless, Chmielinski makes an argument that he was unable to respond meaningfully to the charges against him, citing language from a Massachusetts Supreme Judicial Court opinion, In re Tobin, 628 N.E.2d 1268, 1271 (Mass. 1994): "There is authority for the proposition that an administrative agency must grant discovery

-15-

to a party in a contested case regardless of whether the enabling statute or agency rules provide for it, if refusal to grant discovery would so prejudice the party as to amount to a denial of due process."  Tobin recognizes, however, that it is an unusual case in which due process concerns are raised, as parties "are not entitled to pretrial discovery as a constitutional right."  Id.; see also P.S.C. Res., Inc. v. NLRB, 576 F.2d 380, 387 (1st Cir. 1978) ("Although [barring pre-hearing discovery in] a particular unusual situation might result in gross injustice and call for some modification, the instant case is surely not such a situation."); Kelly v. U.S. EPA, 203 F.3d 519, 523 (7th Cir. 2000); Alexander v. Pathfinder, Inc., 189 F.3d 735, 741 (8th Cir. 1999).  Whatever impediment was placed on Chmielinski's ability to investigate, it was outweighed by the defendants' interests in protecting those who complained, and it certainly did not violate due process.

Chmielinski makes a separate set of claims that the outcome of the hearing was predetermined and the hearing officer was biased.  In this sense, he says, his opportunity to be heard was not meaningful.  We first look at the nature of the bias allegations.  He argues there was bias when O'Brien issued his decision only one day after Chmielinski's counsel received the transcripts of the termination hearing, contrary to an agreement made with O'Brien at the hearing that the plaintiff would be

-16-

allowed to make a written submission after receiving the transcripts. This does not show bias.

The most troubling of Chmielinski's allegations raising questions of the appearance of bias involves O'Brien, the hearing officer, having lunch with the opposing attorney in the very proceedings against Chmielinski on one of the hearing days. The state maintains that even if O'Brien was biased, Chmielinski had no state-law right to an unbiased hearing officer, nor a federal right. It is true that pertinent regulations do not say that the hearing officer needs to be unbiased.

We do not think the issue of bias can be addressed with an abstract broad statement that the due process standard of Loudermill either always or never requires that the hearing officer be unbiased.[6] There is, to start, a distinction between

_____

[6]     If there were a requirement of an unbiased decisionmaker under state law, the plaintiff would have an argument that O'Brien's purported bias was a random and unauthorized act. See Cronin v. Town of Amesbury, 81 F.3d 257, 260 n.2 (1st Cir. 1996). In that instance, the adequacy of the post-termination procedures become relevant. See, e.g., McKinney v. Pate, 20 F.3d 1550, 1562 (11th Cir. 1994) (en banc) ("[D]ue process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" (quoting Schaper v. City of Huntsville, 813 F.2d 709, 715-16 (5th Cir. 1987) (second alteration in original) (internal quotation marks omitted)); see also McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir. 1995) ("We also find most persuasive the application of Parratt v. Taylor to claims that pretermination decisionmakers were not impartial."). Here, those post-termination procedures were obviously adequate. Plaintiff could and did complain about O'Brien's supposed bias in his administrative appeal. He makes no claim that his post-termination decisionmakers were biased. For these reasons as well as the reasons in the text, Chmielinski's

-17-

impartiality and degrees of bias.  We have held that there is no requirement that the hearing officer be impartial; indeed, the terminating employer may preside.  Acosta-Sepulveda v. Hernandez-Purcell, 889 F.2d 9, 12 (1st Cir. 1989).  We have also held that there need not be a formal hearing at all. Feliciano-Angulo v. Rivera-Cruz, 858 F.2d 40, 44 (1st Cir. 1988). But that impartiality is not demanded does not itself determine whether bias can be so severe as to interfere with due process at the hearing itself.

A key concern in Loudermill was that the employee have an opportunity to present his side of things to correct errors of fact on which the termination decision is based.  See Loudermill, 470 U.S. at 545-46.  In theory at least, a decisionmaker could be so utterly biased as to deprive an employee of even that error-correction ability.  But there is no allegation of that in this case, even if we were to infer from Chmielinski's allegations that O'Brien had some bias.  Chmielinski's complaint does not allege anywhere that any alleged bias on O'Brien's part deprived him of the opportunity to put his version of the facts before the decisionmaker, or that there was any error of primary facts in the grounds used for termination that could be explained only by bias. Chmielinski may disagree with the exercise of judgment which led to

_____

claim fails in any event.

the imposed penalty of termination of his employment, but that does not state a due process concern arising out of the hearing itself.

III.

Because the plaintiff failed to state a claim upon which relief could be granted, the district court appropriately granted the motion to dismiss.

Affirmed.