DECISION
The case is before this Court on Plaintiffs, Fermin Ciprian and The Providence Teachers Union Local 958, AFT, AFL-CIO's motion for a preliminary injunction. Plaintiffs seek to enjoin the Providence School Board from giving effect to its October 2008 decision, affirmed at a September 2009 hearing, to terminate Mr. Ciprian's employment as a school teacher and coach. For the reasons explained herein, the Court denies Plaintiffs' motion.
 I FACTS AND TRAVEL
Facts set forth are found for the purposes of the Preliminary Injunction motion only.
The Plaintiff, Fermin Ciprian, was a tenured physical education teacher and sports coach at a public high school in Providence until October 2007. The Providence School Board sought to terminate Mr. Ciprian's employment on the grounds that Mr. Ciprian was no longer capable of *Page 2 
performing the duties of the teacher and coach positions. (See Ex. 3.[1]) On October 15, 2007, the School Board placed Mr. Ciprian on paid administrative leave while its human resources staff conducted inquiries into some of the difficulties Mr. Ciprian had encountered on the job. (Ex. 2.) On September 8, 2008, the School Board voted to terminate Mr. Ciprian's employment effective as of the beginning of the 2008-2009 school year. (Ex. 2.)
On September 18, 2008, Mr. Ciprian petitioned the Superior Court for an order, restraining the School Board from effecting his termination. See Ciprian v. Providence School Board, C.A. No. 08-6046. Mr. Ciprian based his request for relief, in part, on the fact that the School Board had not complied with G.L. 1956 § 16-13-3, which requires notice of termination no later than March 1 of the school year (i.e., March 1, 2008 for termination effective before the 2008-2009 school year). (Ex. 2.) On September 29, 2008, the Superior Court ordered, by consent of the parties, that Mr. Ciprian's pay and health benefits be continued "until such time as when there is a decision on the merits as to Plaintiff's motion for TRO and injunctive relief." (09/29/2008 Order.) Thereafter, the School Board rescinded its September 8, 2008 termination of Mr. Ciprian's employment. (Ex. 2.)[2] On October 27, 2008, the School Board suspended Mr. Ciprian without pay for the 2008-2009 school year and terminated him beginning with the start of the 2009-2010 school year. (Ex. 2.) While his health insurance benefits continued, Mr. Ciprian ceased receiving his salary. (Pls.' 11/05/2009 Mem. at 6.) As required by the Teacher Tenure Act, the School Board provided Mr. Ciprian with notice of dismissal prior to March 1, 2009 and notice of the reasons for his dismissal more than a month prior to the end of the 2008-2009 school year. (See sections 16-13-3, 16-13-4; Ex. 2.) On November 18, 2008, Mr. Ciprian *Page 3 
appealed the School Board's decision and requested a hearing before the full board pursuant to § 16-13-4. (Ex. 2.)
On Thursday, September 17, 2009, Mr. Ciprian's counsel received notification that Mr. Ciprian's appeal before the full board was scheduled for the evening of Monday, September 21, 2009. (09/21/2009 Tr. 11:11-14, 11:6-12.) Mr. Ciprian requested another hearing date so that he could have more time to contact witnesses and secure their attendance at the hearing, but the School Board denied the request. (09/21/2009 Tr. 64:13-16, 65:4-13.) At this hearing, the City's witness, Mr. Dennis Sidoti, summarized the evidence of Mr. Ciprian's professional difficulties. (See
09/21/2009 Tr. 45-64.) Plaintiffs were permitted to cross-examine Mr. Sidoti but was initially limited to ten minutes of cross-examination. (09/21/2009 Tr. 78:4-8.) Later, the School Board relented somewhat and allowed Mr. Ciprian an hour to cross-examine Mr. Sidoti, present his evidence, and make closing remarks. (09/21/2009 Tr. 80:17-25.) The School Board offered to accept a summary of the Plaintiffs absent witnesses' testimony and Plaintiffs made a brief, vague offer of proof. (09/21/2009 Tr. 67:6-12, 80:22-25.) It is unclear whether Plaintiffs made any efforts to contact, let alone interview, any prospective witnesses.[3]
Mr. Ciprian did not conclude his case in the time allotted, and the School Board ended the hearing. (09/21/2009 Tr. 116:16-18, 117:3.) The School Board affirmed the decision to terminate Mr. Ciprian's employment. (Ex. 3.) Mr. Ciprian's health insurance benefits ended shortly after the School Board's decision. (Pls.' 11/05/2009 Mem. 7.) Mr. Ciprian appealed the *Page 4 
decision to the Rhode Island Department of Education on October 13, 2009. (Ex. 4.) He filed the instant action on October 20, 2009.
 II PRELIMINARY INJUNCTION
When deciding whether to grant a preliminary injunction, this Court considers the following factors:
 (1) whether the moving party established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balance of the equities, including the public interest, weighed in favor of the moving party; and (4) whether the issuance of a preliminary injunction served to preserve the status quo ante.
Allaire v. Fease, 824 A.2d 454, 457 (R.I. 2003.) For the following reasons, this Court is unable to grant the requested injunction to Mr. Ciprian.
Tenured public employees have a property right in continued employment. Cleveland Bd. of Educ. v. Loudermill,470 U.S. 532, 538 (1985.) Before a state may deprive a tenured public employee of such a property right, it must afford due process. Id. at 542. In Cleveland Board ofEducation v. Loudermill, the Supreme Court of the United States outlined the process due to a terminated public employee. Id. at 542-43. Pretermination proceedings must afford the public employee "notice and an opportunity to respond." Id. at 546; Chmielinski v.Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008) (noting that an explanation of the employer's evidence is also required). Pretermination hearings may be far less formal and thorough than a judicial proceeding. Loudermill, 470 U.S. at 545. In addition to pretermination procedures, government employers often must provide a posttermination hearing. Id. at 546-47; butsee Kenyon v. Town of Westerly, 694 A.2d 1196 (R.I. 1997) (in which the formality and protections of the pretermination hearing far exceeded the minimum due process requirements and obviated *Page 5 
the need for a posttermination proceeding.) In this case, the School Board provided the pretermination hearing in October 2008 and the posttermination hearing on September 21, 2009. The adequacy of the posttermination hearing is at issue here.
Posttermination procedures for tenured teachers in Rhode Island are governed by § 16-13. Bochner v. ProvidenceSchool Committee,490 A.2d 37, 39 (R.I. 1985.) Section 16-13-3 states:
 Whenever a tenured teacher in continuous service is to be dismissed, the notice of the dismissal shall be given to the teacher in writing on or before March 1st of the school year immediately preceding the school year in which the dismissal is to become effective. The teacher shall be furnished with a complete statement of the cause(s) for the dismissal by the governing body of the school and shall be entitled to a hearing and appeal pursuant to the procedure set forth in § 16-13-4.
Section 16-13-4 outlines the specific procedures for requesting a posttermination hearing:
 The statement of cause for dismissal shall be given to the teacher in writing by the governing body of the schools at least one month prior to the close of the school year. The teacher may, within fifteen (15) days of the notification, request in writing a hearing before the full board. . . .Both teacher and school board shall be entitled to be represented by counsel and to present witnesses.
The posttermination procedures in § 16-13 are consistent with the requirements of the due process clause. Barber v.Exeter-West Greenwich School Committee,418 A.2d 13, 20 (R.I. 1980.)
The School Board sent Mr. Ciprian a letter on November 7, 2008. This letter notified Mr. Ciprian that he had been dismissed and gave him the Board's reasons for the dismissal, thereby fulfilling the statutory requirements that the School Board provide notice of dismissal before March 1 of the school year preceding the school year in which the termination was to take effect and that it provide a statement of reasons for dismissal at least a month prior to the end of the *Page 6 
school year. See sections 16-13-3, 16-13-4. On November 18, 2008 — within fifteen days of receiving the statement of reasons for dismissal — Mr. Ciprian appealed the October 27, 2008 decision to the full School Board.See section 16-13-4. In response to Mr. Ciprian's request, the School Board convened a hearing on September 21, 2009.
Plaintiffs argue that the School Board did not comply with the constitutionally-sound procedures mandated by § 16-13-4 because the School Board gave only a few days notice prior to the hearing, limited the amount of time Plaintiffs had to cross-examine the School Board's witness and makes its own case, and did not produce all documents on which the School Board's witness relied. The language of § 16-13-4 — that "[b]oth teacher and school board shall be entitled to be represented by counsel and to present witnesses" — provides little guidance about how much notice is required or how much time the School Board must allow for the presentation of the dismissed teacher's case. When determining what procedural safeguards are due, the High Court instructs "[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. Due process is flexible and calls for such procedural protections as the particular situation demands." Gilbert v. Homar,520 U.S. 924, 930 (1997) (internal quotations omitted). Therefore, the specific circumstances of the situation dictate the level of protection due. Id. In general, posttermination hearings must be more comprehensive than the minimum requirements for a pretermination Loudermill hearing — that is, more comprehensive than notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. See Loudermill, 470 U.S. at 546;Chmielinski, 513 F.3d at 316. The hearing must be held "`at a meaningful time and in a meaningful manner.'"Calderon-Garnier v. Rodriguez, 578 F.3d 33, 38 (1st Cir. 2009) (quoting Mathews v. Eldridge,424 U.S. 319, 333-35 (1976) (other quotations omitted)). *Page 7 
Notice of an upcoming hearing is an essential element of due process. Loudermill, 470 U.S. at 546. Notice must be "reasonably calculated, under all the circumstances," to inform the employee of the proposed action and "afford [him] an opportunity to present [his] objections." Robert P. Quinn Trust v. Ruiz,723 A.2d 1127, 1129 (R.I. 1999) (in context of notice of tax sale) (quoting Mennonite Board of Missions v. Adams,462 U.S. 791, 795 (1983) (other quotations omitted)). In light of the surrounding circumstances, the notice of the September 21, 2009 hearing was reasonably calculated to allow Mr. Ciprian to attend the hearing and present his objections. Although Mr. Ciprian had only a few days notice of the precise date of the posttermination hearing, the fact that he had requested the hearing in accordance with § 16-13-4 indicates that he was aware that a hearing would occur at some point. At the hearing, Plaintiffs argued that the notice had given them insufficient time to contact witnesses, interview them, and secure their attendance at the hearing. However, the Plaintiffs could have begun interviewing prospective witnesses months in advance of receiving specific notice of the hearing date.[4] The School Board's conduct in giving Mr. Ciprian such short notice was inconsiderate, but not a violation of Mr. Ciprian's due process rights.
The School Board was not obligated to provide pre-hearing discovery to Mr. Ciprian. See section 16-13-4;Corrigan, 639 F.2d at 837; Barber, 418 A.2d at 20. In this case, Mr. Ciprian could put on his case "in a meaningful time and in a meaningful manner" without pre-hearing production of documents. Calderon-Garnier, 578 F.3d at 38 (1st Cir. 2009) (internal quotations omitted.) However, common courtesy would suggest more complete disclosure by the Board when a tenured teacher's job was at risk. *Page 8 
The Plaintiffs complain that they were not afforded the right to cross-examine Mr. Sidoti or confront the teachers who had given statements to Mr. Sidoti. In fact, Plaintiffs' counsel was permitted to cross-examine Mr. Sidoti. See 09/21/2009 Tr. 64:20-22. The cross-examination was merely time limited. Because the Plaintiffs were afforded the right to cross-examine the School Board's witnesses, we will not decide if cross-examination is a necessary component of a "more comprehensive" hearing or the statutory right to present witnesses. See section 16-13-4; Gilbert,520 U.S. at 929.
More troubling is the School Board's decision to limit the time that Plaintiffs had to make his case and cross-examine the School's witness. Section 16-13-4 allows a terminated teacher to present witnesses. Section 16-13-4; Corrigan, 639 F.2d at 837. The statute does not indicate how much time the School Board must allow; thus the amount of time due is flexible and dependent on the circumstances of each particular case. Gilbert,520 U.S. at 930 (stating that due process is "flexible and calls for such procedural protections as the particular situation demands.") This Court cannot conclude that an hour was an inadequate amount of time, in light of the fact that Mr. Ciprian did not call any witnesses, give his own testimony, or present evidence. Mr. Ciprian devoted his time to cross-examining the School Board's witness. If the facts of the case were different, an hour in which to rebut the employer's reasons for terminating a teacher might not be sufficient; but in this case, the School Board provided a sufficient opportunity to present witnesses and respond to the School Board's allegations.[5]
While minimal procedural due process was afforded, the limited notice, scant disclosure, and time restrictions raise the spectre of substantive due process. The School Board, unnecessarily neared the line which differentiates constitutionally-sound conduct from arbitrary *Page 9 
and capricious state action that amounts to a violation of substantive due process. In performing the substantive due process analysis, the Court is mindful of the warning of the High Court that
 It would be absurd to think that all "arbitrary and capricious" government action violates substantive due process . . . The judicially created substantive component of the Due Process Clause protects, we have said, certain "fundamental liberty interest[s]" from deprivation by the government, unless the infringement is narrowly tailored to serve a compelling state interest. Freedom from delay in receiving a building permit is not among these "fundamental liberty interests." City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation, 538 U.S. 188, 200, 123 S.Ct. 1389, 1397 (U.S.,2003), concurring opinion citations omitted.
Here, Mr. Ciprian's tenured employment is clearly at risk. A more thorough analysis of the substantive due process claim is clearly appropriate. Judge Selya noted
 a substantive due process claim implicates the essence of state action rather than its modalities; such a claim rests not on perceived procedural deficiencies but on the idea that the government's conduct, regardless of procedural swaddling, was in itself impermissible. . . . Newman, 884 F.2d at 25, or those which run counter to "the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937), or those which, in context, appear "shocking or violative of universal standards of decency," Furtado v. Bishop, 604 F.2d 80, 95 (1st Cir. 1979) (footnote omitted), cert. denied, 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980). See Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (in substantive terms, Due Process Clause condemns conduct "too close to the rack and the screw"); cf. Tenoco Oil Co. v. Department of Consumer Affairs, 876 F.2d 1013, 1020-24 (1st Cir. 1989) (discussing disfavored status of substantive due process claims). Amsden v. Moran, 904 F.2d 748, 754-755 (C.A.1,1990), footnotes deleted.
Substantive Due Process applies to far more than corporal punishment claims. The "Due Process Clause not only ensures fair procedure, it also prohibits certain arbitrary, wrongful *Page 10 
government actions regardless of the fairness of the procedures used to implement them." Rhode Island Econ. Dev. Corp. v. The ParkingCo., 892 A.2d 87, 97 (R.I. 2006.) Conduct that is indecent, "egregiously unacceptable, outrageous, or conscience-shocking[,]" "brutal, demeaning, . . . harmful[,]" or legally irrational and "not keyed to a legitimate state interest" violates substantive due process rights. Maymi v. Puerto Rico Ports Auth.,515 F.3d 20, 30 (1st Cir. 2008); Amsden, 904 F.2d at 754;L.A. Ray Realty v. Town Council of Cumberland,698 A.2d 202, 211 (R.I. 1997) (internal quotations omitted throughout). The level of "arbitrariness and caprice must be stunning[]" to violate substantive due process rights.Amsden, 904 F.2d at n. 5.
Here, the School Board's action was neither conscience-shocking, brutal, nor stunningly capricious; therefore, it did not violate the Due Process Clause. However, the conduct of the School Board was, in short, unnecessarily inappropriate. The School Board could have simply allowed more time for a defense, provided explicit notice and in-depth disclosure. It should have scheduled its hearing more than a week in advance. The School Board's failure to provide common civility, unnecessarily subjected it to a review by this Court as to whether the Board had passed the substantive due process precipice. Fairness requires more, simple courtesy to Mr. Ciprian and his counsel could have avoided any Due Process analysis. Instead, the School Board's conduct gave this Court considerable pause.
Because the procedures that the School Board followed complied with both the statute and the minimum procedural due process requirements, Mr. Ciprian is unlikely to prevail on the merits of his case. Thus he does not meet the Allaire test for a preliminary injunction. Allaire, 824 A.2d at 457. *Page 11 
In addition, Mr. Ciprian has not shown that he will suffer irreparable harm without the requested preliminary injunction.See id. Mr. Ciprian argues that the recent loss of his employer-subsidized health insurance benefits is an irreparable harm requiring immediate redress in the nature of an injunction. This argument is unavailing because Mr. Ciprian may obtain health insurance through COBRA, a federal statutory post-employment right to continued coverage under the same health plan. See
Consolidated Omnibus Reconciliation Act of 1985, Pub.L. No. 99-272, 100 Stat. 82 (1986), as amended. Because Mr. Ciprian's loss will be monetary, he has an adequate remedy at law and does not require injunctive relief. Also, Mr. Ciprian may maintain the status quo by extending his health care coverage through COBRA. See Alaire, 824 A.2d at 457. Thus an injunction is not necessary to maintain the status quo. Seeid.
 III DEFENDANT'S MOTION TO DISMISS C.A. NO. PC-08-6046
The School Board moves to dismiss the 2008 action between the parties, C.A. No. PC-08-6046 on the grounds that the suit is "moot." (Defs.' 11/04/2009 Mem. 2.) A case is moot when the parties have been deprived of "a continuing stake in the controversy." In reDerderian, 972 A.2d 613, 617 (R.I. 2009.) The parties will continue to have a stake in the controversy at the heart of C.A. No. PC-08-6046 until a decision on the merits or a dismissal. The fact that the School Board rescinded its September 8, 2008 termination of Mr. Ciprian does not alter the fact that justiciable controversies remain. Because the parties continue to have a stake in C.A. No. PC-08-6046, the Defendants motion to dismiss is denied. *Page 12 
 IV THE VALIDITY OF THE SEPTEMBER 2008 ORDER
This Court's September 29, 2008 order that Mr. Ciprian's pay and benefits continue "until such time as when there is a decision on the merits as to Plaintiffs' motion for TRO and injunctive relief[]" continued to be valid after the School Board's rescission of its September 8, 2008 decision. (09/29/2008 Order.) The language of the order plainly instructs that benefits must continue until the Superior Court decided the merits of Mr. Ciprian's suit. That court order remains in effect. See R.I. Super. Ct. R. 60 (2009.) By its own words, the order remained in effect until a decision on the merits of Mr. Ciprian's "motion for a TRO and injunctive relief." (09/28/2008 Order.)
The injunctive relief that Mr. Ciprian requested in the instant case is substantially similar to the injunction sought in C.A. No. PC-08-6046. While some of the facts are different, both motions for injunctive relief ask the Court to enjoin the School Board's termination of Mr. Ciprian on due process and statutory grounds. Therefore, this Court's denial of injunctive relief in C.A. No. PC-09-6059 is a decision "on the merits as to Plaintiffs motion for TRO and injunctive relief[]" as contemplated in the September, 2008 order in C.A. No. PC-08-6046.
In summary, Defendants motion to dismiss P.C. No. 08-6046 is denied because that case is not moot. The order remained in effect until the date of the instant decision on Plaintiffs motion for injunctive relief. Therefore, the School Board ought to have continued to provide Mr. Ciprian with his health insurance benefits until today's date and is ordered to provide him with such benefits until today's date. *Page 13 
 V CONCLUSION
Mr. Ciprian is not likely to succeed on the merits of his due process claim; therefore, his motion for a preliminary injunction is denied. This decision extinguishes the effects of the September 2008 order regarding Mr. Ciprian's benefits. The School is ordered to continue Mr. Ciprian's health insurance benefits until the date of today's decision. The Defendants' motion to dismiss P.C. No. 08-6046 is denied.
[1] The exhibits referenced are those introduced at the hearing on the injunction.
[2] Until now, neither party has sought to dismiss the action in C.A. No. 08-6046 or to alter the September 29, 2008 order.
[3] See, e.g. 09/21/2009 Tr. 65:11-13 ("MR. DeSIMONE: . . . we didn't have notice to contact [the prospective witnesses]. If we just started preparing for the case on Saturday, how could we line up witnesses?"); 09/21/2009 Tr. 65:15-19 ("MR. DeSIMONE: . . .we have a list of prospective witnesses. Not all of the people here have I talked to. . ."); 09/21/2009 Tr. 67:6-9 (MR. DeSIMONE: I haven't interviewed all of [the prospective witnesses.] My understanding is that they're going to say that . . . they have no problems with [Mr. Ciprian].")
[4] The School Board was unable to muster all members to attend a hearing for some time. The entire membership was required for this termination hearing.
[5] In addition to the established termination procedures, multiple levels of appeal, including an eventual appeal to the Superior Court, are available to Mr. Ciprian. Section 16-13-4;Bochner, 490 A.2d at 39.