# United States Court of Appeals
## For the First Circuit

No. 07-1695

DAVID FIACCO,

Plaintiff, Appellant,

v.

SIGMA ALPHA EPSILON FRATERNITY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella, Circuit Judge,
and Stahl, Senior Circuit Judge.

Bernard J. Kubetz, with whom Michael R. Clisham and Eaton Peabody were on brief, for appellant.
Catherine R. Connors, with whom Peter W. Culley, Eric J. Wycoff, and Pierce Atwood LLP were on brief, for appellee.

June 13, 2008

**TORRUELLA**, **Circuit Judge**. David Fiacco brought suit against the national fraternity Sigma Alpha Epsilon ("SAE") alleging that members of its Maine chapter ("Maine Alpha") intentionally caused him psychological harm by exposing his past legal troubles to his employer and two local newspapers. The district court granted SAE summary judgment on Fiacco's intentional infliction of emotional distress claim, and Fiacco now contests this order. After careful review, we affirm.

## I. Background

This action is an appeal from a grant of summary judgment, therefore we recite the facts in the light most favorable to Fiacco as non-movant. See, e.g., Franceschi v. U.S. Dep't of Veterans Affairs, 514 F.3d 81, 84 (1st Cir. 2008). Fiacco was the Director of the Office of Community Standards, Rights and Responsibilities ("Office of Community Standards") at the University of Maine at Orono ("UMO"). In this capacity, Fiacco oversaw the student discipline process at UMO: he reviewed allegations of misconduct; assigned case managers to handle grievances; referred cases to UMO administrators or the Conduct Committee for adjudication; and occasionally adjudicated cases himself, subject to review by the Conduct Committee. Fiacco also developed policy statements concerning the student code of conduct and his office, and he answered questions on such matters from members of the UMO community.

In 2002, Fiacco's office started investigating Maine Alpha for misconduct. In response, a group of current and former Maine Alpha members led by Jay Sexton (collectively, "the Sexton Group") hired a private investigator to uncover evidence of any bias Fiacco might hold against SAE or fraternities in general. The investigator found several court records and newspaper articles dating back to Fiacco's college years. Those documents revealed Fiacco's past involvement in two legal proceedings: a conviction for Driving While Ability Impaired ("DWAI") that resulted in his departure from the post of Director of Public Safety at Fort Lewis College in Colorado, and a temporary restraining order secured against him by a former girlfriend. The documents gave no indication that Fiacco was biased against fraternities or, in particular, SAE.

The Sexton Group made copies of these documents and assembled them into packages containing the following unsigned memorandum:

> Enclosed please find newspaper articles and court documents detailing Mr. Fiacco's previous legal difficulties: DWI, Sexual harassment, and Domestic Violence. Is this honestly the best qualified candidate the University of Maine could find for the Office of Judicial Affairs?

The packages were addressed to the University of Maine System Board of Trustees, UMO President Peter S. Hoff, several UMO deans and two local newspapers, the Bangor Daily News and The Maine Campus. They

were placed in a box and mailed to a Maine Alpha alumnus in Colorado, who then anonymously sent the packages to the intended recipients.

Fiacco asserts that the disclosure of this information and the surreptitious manner in which it was disseminated caused him great distress. As a result he became depressed and withdrawn, and his concentration and work performance suffered. He also experienced bouts of insomnia, nightmares, and teeth-grinding, and had to obtain psychological counseling.

On September 19, 2005, Fiacco brought suit against SAE asserting, inter alia, intentional infliction of emotional distress ("IIED"). Federal subject-matter jurisdiction was established through the diversity of the parties' citizenship. On October 12, 2006, SAE moved for summary judgment and -- with the benefit of extensive discovery, oral argument, and additional briefing -- the district court granted this motion on April 5, 2007. The district court found that Fiacco was both a public official and a limited-purpose public figure; hence Fiacco's IIED claim failed because he was unable to prove that the memorandum included in the Sexton Group's packages contained a statement of fact made with actual malice. See Fiacco v. Sigma Alpha Epsilon Fraternity, 484 F. Supp. 2d 158, 175 (D. Me. 2007).[1] Fiacco now appeals.

---

[1] For the purpose of summary judgment the district court chose not to draw a distinction between SAE, the national fraternity, and the Sexton Group or Maine Alpha. In this opinion we do likewise.

## II. **Discussion**

### A. **Standard of Review**

Summary judgment is appropriate when the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the grant of such a motion de novo. GTE Wireless, Inc. v. Cellexis Int'l, Inc., 341 F.3d 1, 4 (1st Cir. 2003). In doing so, we are obliged to "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Nonetheless, we ignore "'conclusory allegations, improbable inferences, and unsupported speculation.'" Suárez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). With specific regard to Fiacco's IIED claim, whether a plaintiff is a public official or public figure is an issue of law that we review de novo. Dixon v. Int'l Bhd. of Police Officers, 504 F.3d 73, 87-88 (1st Cir. 2007).

### B. **Intentional Infliction of Emotional Distress**

Under Maine law, Fiacco's IIED claim survives summary judgment if the facts establish that: 1) SAE intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from its

-5-

conduct; 2) SAE's conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; 3) SAE's actions caused Fiacco emotional distress; and 4) Fiacco's emotional distress was so severe that no reasonable person could be expected to endure it. Curtis v. Porter, 784 A.2d 18, 22-23 (Me. 2001) (internal quotation omitted); accord Wytrwal v. Saco Sch. Bd., 70 F.3d 165, 173 (1st Cir. 1995).

In order to "give adequate 'breathing space' to the freedoms protected by the First Amendment," the Supreme Court has established an additional requisite for IIED recovery where the distress is alleged to have been caused by published speech: public officials and public figures may only recover if they can prove that the publication that harmed them contained a false statement of fact that was made with actual malice. Hustler Magazine v. Falwell, 485 U.S. 46, 56 (1988); accord Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 201 (1st Cir. 2006) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). We now revisit the district court's designation of Fiacco as a public official.

### 1. Public Official

Identifying a public official for the purpose of applying the actual malice standard is not an unequivocal process. Not every public employee is a public official, Hutchinson v. Proxmire, 443 U.S. 111, 119 n.8 (1979), but it is not clear "how far down

-6-

into the lower ranks of government employees" the designation extends, New York Times, 376 U.S. at 284 n.23. Only those public employees with "substantial responsibility for or control over the conduct of governmental affairs," however, should be considered public officials. See Rosenblatt v. Baer, 383 U.S. 75, 85 (1966).

This Circuit has devised a three-part test to identify public officials in the libel context. We now apply this test to Fiacco's IIED claim as it too stems from a published statement that is alleged to have caused harm. A public official, then, is a person who 1) holds a position of influence over issues of public importance, as defined by the position's inherent attributes; 2) has special access to the media as a means of self-help; and 3) assumed the risk of diminished privacy upon taking on the position. Mandel, 456 F.3d at 204. Fiacco asserts that he does not qualify as a public official under any of these factors. Our analysis under Mandel, however, is heavily dependent on the facts averred and our thorough review of the record leads to the conclusion that Fiacco does warrant this designation.

The inherent attributes of Fiacco's position as Director of the Office of Community Standards demonstrate that he exercises influence over issues of public importance. The goings-on inside a state university are of interest to the public because state colleges such as UMO are funded with tax revenue, and it is to be expected that the public will want to know how its money is being

managed and spent. See Kassel v. Gannett Co., Inc., 875 F.2d 935, 940 (1st Cir. 1989) (stating that taxpayers have a general interest in the oversight of any publicly-funded employment). While Fiacco's office might address issues as mundane as the enforcement of dorm quiet hours, it is also responsible for the handling of much more sensitive situations such as allegations of date rape and hazing. These types of matters are of clear public importance and, as the office director, Fiacco has a strong influence over the handling of such matters because he sets the policies and either adjudicates or picks the adjudicators who will address such grievances. The first Mandel factor therefore weighs in favor of finding Fiacco to be a public official.

As the Director of the Office of Community Standards, Fiacco also has special access to the media as a means of self-help. As the record reveals, between October 2001 and October 2002 -- before and during the investigation of Maine Alpha -- Fiacco was mentioned by name in eleven newspaper articles appearing in The Maine Campus and the Bangor Daily News. All of these articles recognized Fiacco as the director of the UMO Office of Community Standards or its predecessor, the Office of Judicial Affairs. In some articles Fiacco was quoted speaking on behalf of his office on the UMO student code of conduct and other university policies. One article even noted that Fiacco had been sought for comment, but had declined to speak. It is apparent, then, that Fiacco had special

access to the media beyond that of an ordinary person; therefore, faced with the Sexton Group's mailing, had he wished to defend his reputation in public, the media would likely have covered his story. See Gertz, 418 U.S. at 344 ("Public officials and public figures usually enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy"). The second factor also supports designation as a public official. Cf. Kassel, 875 F.2d at 941 (finding that a staff psychologist at a Veterans' Administration hospital was not a public official and did not have special access to the media because, among other reasons, his duties did not include answering press inquiries).

The third factor, whether Fiacco assumed a risk of diminished privacy when he became Director of the Office of Community Standards, also leads to this conclusion. As highlighted in the preceding analysis, Fiacco could and should have anticipated that some of the sensitive topics and situations handled by his office would attract public attention. Because the public is interested in such matters, it is also interested in Fiacco as the person adjudicating them and/or setting the policies and procedures by which they will be adjudicated. Such an interest should be expected to extend into Fiacco's personal life insofar as such matters might indicate Fiacco's fitness to assume this task. See

Garrison v. Louisiana, 379 U.S. 64, 77 (1964) ("The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant."). Indeed, Fiacco's departure from the position of Director of Public Safety at Fort Lewis College -- a departure precipitated by a personal matter reflecting Fiacco's fitness to hold that office, and which was reported in the local media -- must have served to put Fiacco on notice that holding a directorial position in a college office of student conduct and safety entails a risk of diminished personal privacy.

Based on our analysis of the three Mandel factors, then, Fiacco qualifies as a public official and must meet the actual malice standard in order to recover for his IIED cause of action. As Fiacco is a public official, we need not reach the question of whether he is also a public figure.

## 2. Actual Malice

The First Amendment requires Fiacco, as a public official, to prove that the Sexton Group's mailing contained a false statement of fact and was made with actual malice. Actual malice means that the offending party published a statement about the plaintiff "with knowledge that the statement was false or with reckless disregard as to whether or not it was true." Hustler

Magazine, 485 U.S. at 56; accord Mandel, 456 F.3d at 201 (quoting New York Times, 376 U.S. at 279-80).

Regarding the requirement of identifying a false statement of fact, Fiacco does not dispute the truth of the court documents and newspaper articles included in the Sexton Group's mailing. Instead, Fiacco only challenges the Sexton Group's characterization of his legal troubles in the anonymous memorandum.[2] Specifically, he asserts that 1) he was not convicted of "DWI," 2) he did not commit sexual harassment, and 3) he did not engage in domestic violence. We address each of Fiacco's arguments in turn.

On Fiacco's first claim, that he was never convicted of "DWI" or Driving While Intoxicated but only of "DWAI" or Driving While Ability Impaired, we first acknowledge that under Colorado law -- the state where the offense took place -- the only two drinking and driving offenses for which Fiacco could have been convicted are DWAI and Driving Under the Influence ("DUI"). See Colo. Rev. Stat. § 42-4-1301(1) (2007). As such, Fiacco could not technically have been convicted of DWI as indicated by the Sexton

---

[2]  That memorandum reads as follows:

> Enclosed please find newspaper articles and court documents detailing Mr. Fiacco's previous legal difficulties: DWI, Sexual harassment, and Domestic Violence.  Is this honestly the best qualified candidate the University of Maine could find for the Office of Judicial Affairs?

-11-

Group's memo. This discrepancy is of little import however, because DWI and DUI are essentially interchangeable terms in that they both indicate that the defendant attempted to drive a vehicle with an elevated amount of alcohol or drugs in his system so that such activity was illegal and unsafe. This is also the essence of a DWAI conviction. See id. at § 42-4-1301(1)(g). It is for this reason that Fiacco's attempt to distinguish between DWAI and DUI based on the blood alcohol content level required for each conviction -- between 0.05 and 0.08 for DWAI; 0.08 or above for DUI; id. at § 42-4-1301(6)(a) -- falls flat; more so because Fiacco's blood alcohol level at the time of this incident was 0.89 percent. Thus the memorandum's assertion that Fiacco had previous legal difficulties with DWI is not a false statement of fact. See Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." (citation and internal quotation marks omitted)).

Fiacco's second claim, that he has never been the subject of sexual harassment allegations or charges, also borders on the disingenuous. Fiacco admits, and the mailed court records confirm, that he was involved in a dispute with a former girlfriend who ultimately secured a restraining order against him under the Colorado Domestic Abuse Act, formerly Colorado Revised Statutes §§ 14-4-101 et seq. (2004). Court documents related to those

proceedings reveal Fiacco's acknowledgment that his actions towards his former girlfriend "may have crossed the line into harassing behavior."  As such, the Sexton Group memorandum's statement that Fiacco has had legal difficulties with sexual harassment is not false.

Regarding Fiacco's third and final claim, we believe the memorandum's statement that Fiacco has had legal difficulties with domestic violence is validated by the text of the permanent restraining order secured by Fiacco's former girlfriend, which reads: "THE COURT FINDS . . . that you [Fiacco] have committed an act of violence against the plaintiff, or have threatened to do so."[3]  This alone is enough to establish that the memorandum's statement is not a false statement of fact.  Contrary to Fiacco's assertions, a conviction for domestic violence is not required to make this statement true.

As Fiacco is unable to prove that the offensive memorandum included a false statement of fact, he fails to meet the first prong of the actual malice standard applicable to him as a public official.  We need go no further to address whether the Sexton Group acted with actual malice.  Fiacco is unable to meet the requirements of the IIED cause of action and cannot recover

---

[3]  Though this order was later vacated on appeal, the appellate court did not disturb the trial court's finding that Fiacco had committed an act of domestic violence.

damages.  The district court's grant of summary judgment to SAE was proper.

### III. <u>Conclusion</u>

For the foregoing reasons, the district court's judgment is affirmed.

**<u>Affirmed</u>**.