A.F. LUSI CONSTRUCTION, INC.

v.

RHODE ISLAND CONVENTION
CENTER AUTHORITY.

No. 2006–106–Appeal.

Supreme Court of Rhode Island.

Nov. 7, 2007.

John F. Lusi, Esq., Smithfield, for Plaintiff.

Jeffrey K. Techentin, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The plaintiff, A.F. Lusi Construction, Inc. (plaintiff) appeals from a Superior Court judgment in favor of the defendant, Rhode Island Convention Center Authority (defendant). Judgment was entered pursuant to an order granting the defendant's motion to dismiss the plaintiff's complaint in its entirety for failing to state a claim upon which relief may be granted and for lack of standing. For the reasons set forth herein, we affirm the judgment of the Superior Court dismissing this action.

### A

### Facts and Travel

This litigation centers on defendant's plans to renovate the Dunkin' Donuts Center–Providence (Center). The following are the facts set forth in plaintiff's complaint, which we assume are true for purposes of reviewing on appeal a motion justice's dismissal for failure to state a claim upon which relief can be granted. *See Hyatt v. Village House Convalescent Home, Inc.*, 880 A.2d 821, 823 (R.I.2005).

The defendant is a public corporation established by law to "construct, manage, and operate a convention center" in this state. G.L.1956 § 42–99–4(b). The defendant's purchase of the Center and the land upon which it is located ultimately gave rise to plaintiff's complaint.

In early 2004, defendant solicited consultants to study the feasibility of acquiring and renovating the Center in an effort to bring its plan of restoring the Center to fruition. Three consulting firms-Ellerbe Becket, Inc., CSL International, and Gilbane Building Co.-were provided with information about the Center and access to its premises, enabling them to author a feasibility study for defendant.

After the study was completed, the General Assembly authorized defendant to borrow more than $90 million to finance the acquisition and renovation project. With financing in place, defendant issued a request for proposals (Design RFP), seeking an architectural/engineering firm to design the renovations to the center. At that time, plaintiff attended a mandatory pre-proposal conference for prospective bidders and toured the facility-although plaintiff admits that it "did not intend to respond to the Design RFP as it is not in the business of providing architectural/engineering services but is a general building contractor." Nevertheless, in August 2005, plaintiff wrote to defendant expressing its belief that it would be unlawful and an improper conflict of interest to allow any firm that participated in the feasibility study to compete for any contract related to the subject matter of the study. Ultimately, defendant awarded the design project to Ellerbe–Becket; but, according to plaintiff, as of the time it filed its complaint, no contract had been executed between defendant and that firm.

The defendant next issued a request for proposal for the construction of renovations to the Center (Construction RFP). The Construction RFP required prospective bidders to submit a cost-reimbursement contract, a contract that sets a guaranteed maximum price, which is calculated by adding a fixed fee to a contractor's cost. The plaintiff contends that this type of contractual arrangement violates the Rhode Island State Purchases Act, G.L. 1956 chapter 2 of title 37 (State Purchases Act). According to plaintiff, this type of contract is permitted only if a written determination has been made, finding that a cost-reimbursement contract would be less costly to the state than any other type of contract.

Once again, plaintiff attended defendant's mandatory pre-proposal conference, but never bid on the project. The plaintiff contends that it did not respond to the Construction RFP because of defendant's "failure to follow the applicable legal requirements that govern [defendant's] procurement of construction."

Ultimately, two firms submitted bids, one of which was Gilbane, a firm that previously had participated in the feasibility study. At the time of plaintiff's complaint, defendant had not yet selected a construction manager.

On December 19, 2005, plaintiff filed a five-count verified complaint against defendant, alleging various violations of the State Purchases Act, the common law, and the Rhode Island Constitution. Count 1 of plaintiff's complaint alleged that defendant violated the State Purchases Act by soliciting bids on the basis of a cost-reimbursement contract rather than a lump-sum fixed-fee contract. Count 2 further alleged that it was a conflict of interest and a violation of the State Purchases Act to permit Gilbane and Ellerbe–Becket to submit bids for work on the project after they previously had participated in the feasibility study.

Count 3 contended that it was a violation of state law to require prospective bidders to guarantee the maximum price of the project. The plaintiff also alleged that defendant violated state law by failing to make a written determination that using a competitive sealed bidding process was im-

practicable. Additionally, plaintiff alleged that the request for bids was impermissible because it failed to specify whether the award would be based on the lowest bid price or the lowest evaluated bid price. Finally, plaintiff contended that defendant's failure to use a formal or weighted average method for evaluation of the bids violated the State Purchases Act.

Count 4 alleged that defendant violated the common law requirements governing public procurements and "committed a palpable abuse of discretion" by failing to exclude the firms that participated in the feasibility study from bidding on contracts relating to the Center.

Finally, count 5 alleged that defendant's failure to disqualify the firms that participated in the feasibility study created an appearance of impropriety in violation of article 3, section 7, of the Rhode Island Constitution. According to defendant, such failure gave the firms a "substantial and unfair advantage over other prospective candidates."

The defendant moved to dismiss plaintiff's complaint pursuant to Rule 12(b) of the Superior Court Rules of Civil Procedure on the basis that the complaint failed to state a claim for relief and that plaintiff lacked standing to file the instant claims. To support its motion, defendant argued that the State Purchases Act does not apply to defendant's construction projects and, alternatively, that even if the act applied, plaintiff failed to exhaust its administrative remedies as required by the act. The defendant also argued that neither the Rhode Island common law, nor the Rhode Island Constitution require the disqualification of firms that participated in a feasibility study from bidding on contracts relating to that study. Finally, defendant contended that plaintiff lacked standing to raise any claim in its complaint because it

was not qualified to bid on either the design or construction of the project.

On January 6, 2006, the motion justice issued a bench decision dismissing each of plaintiff's allegations. The motion justice first dismissed count 5 of plaintiff's complaint after finding that the constitutional provision upon which plaintiff based its argument, R.I. Const. art. 3, sec. 7, does not give rise to a private cause of action for injunctive relief. The motion justice next dismissed counts 1 through 3, which all were based on violations of the State Purchases Act, concluding that the act does not apply to construction contracts that defendant entered into. With respect to count 4, the motion justice concluded that under a narrow reading of the complaint, it failed to state a claim upon which relief could be granted. She declined, however, to address whether a more expansive reading of the complaint would give rise to a cognizable claim. Finally, the motion justice determined that plaintiff did not have standing to assert any of the five claims in its complaint because it failed to assert sufficient facts to demonstrate an injury in fact. Accordingly, the motion justice entered final judgment in favor of defendants on January 10, 2006, from which plaintiff timely appealed.

On appeal plaintiff asserts that the motion justice erred in dismissing its complaint. The plaintiff contends that the State Purchases Act applies to construction contracts that defendant entered into. Additionally, plaintiff argues that article 3, section 7, of the Rhode Island Constitution creates a private cause of action for defendant's alleged ethical violations. Finally, plaintiff vigorously contends that it was an error to dismiss its complaint based upon a lack of standing because it has alleged sufficient facts to satisfy this Court's minimal pleading requirements.

## B

### Standard of Review

■ When reviewing the grant or denial of a Rule 12(b)(6) motion, this Court, applying the same standards as the motion justice, must "assume that the allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party." *McKenna v. Williams*, 874 A.2d 217, 225 (R.I. 2005) (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I.2000)). "The 'sole function of a motion to dismiss' pursuant to Rule 12(b)(6) is 'to test the sufficiency of the complaint.'" *McKenna*, 874 A.2d at 225 (quoting *Rhode Island Affiliate, ACLU, Inc. v. Bernasconi*, 557 A.2d 1232, 1232 (R.I.1989)). To carry out this function, we "examine the complaint to determine if plaintiffs are entitled to relief under any conceivable set of facts." *McKenna*, 874 A.2d at 225. A motion to dismiss is proper if it is clear beyond a reasonable doubt that plaintiff will not be entitled to relief under any set of facts that could be proved to support the claim. *Hyatt*, 880 A.2d at 824.

## C

### Failure to State a Claim upon Which Relief Can be Granted

At the outset, this Court recognizes that this case presents a unique question of standing. Assuming, without deciding, that plaintiff survives the threshold requirement of standing to invoke the Superior Court's jurisdiction, we conclude that plaintiff would not be entitled to relief under any set of facts that could be proved to support the five counts of its complaint.

### 1

### Applicability of the State Purchases Act

■ The plaintiff first contends that the motion justice erred by dismissing its complaint on the grounds that the State Purchases Act does not govern defendant with respect to construction contracts. According to plaintiff, defendant was obliged to follow the provisions of the State Purchases Act, and its failure to do so violated state law.

Two legislative enactments are central to plaintiff's claim: the State Purchases Act, chapter 2 of title 37 and the Convention Center Authority Act, chapter 99 of title 42. The State Purchases Act applies to "every expenditure of public funds except as otherwise provided by law, by this state, or a public agency under any contract or like business agreement." Section 37–2–4. The act further specifies that defendant is a public agency. Section 37–2–7(16). Consistent with the State Purchases Act, the Convention Center Authority Act (Convention Center Act) provides, "The corporation [defendant] shall be considered a public agency and subject to the provisions of chapter 2 of title 37 entitled: 'state purchases' to the extent that those provisions are not inconsistent with the provisions of this chapter." Section 42–99–20. However, the Convention Center Act relieves defendant of its obligation to comply with the State Purchases Act with respect to contracts for the acquisition of land and improvements on the land and for the construction of buildings and improvements. The statute reads, in relevant part, that "contracts for the acquisition of land and improvements on land and for the construction of buildings and other improvements undertaken pursuant to this act need not comply with the provisions of any other state law applicable to contracts for the construction and acquisition of city or state owned property." Section 42–99–21.

■ It is well settled in this jurisdiction that "[w]hen the language of a statute

is clear and unambiguous, we must enforce the statute as written by giving the words of the statute their plain and ordinary meaning." *State v. Sivo*, 925 A.2d 901, 916 (R.I.2007) (quoting *State v. Andujar*, 899 A.2d 1209, 1215 (R.I.2006)). "[O]ur ultimate goal is to give effect to the General Assembly's intent. * * * The best evidence of such intent can be found in the plain language used in the statute." *Andujar*, 899 A.2d at 1215 (quoting *State v. Menard*, 888 A.2d 57, 60 (R.I.2005)). If that language is unambiguous, "'there is no room for statutory construction and we must apply the statute as written.'" *Id.* Furthermore, this Court is mindful of the guidance the General Assembly has offered should a situation arise in which two provisions of the General Laws conflict. General Laws 1956 § 43–3–26, provides:

> "Wherever a general provision shall be in conflict with a special provision relating to the same or to a similar subject, the two (2) provisions shall be construed, if possible, so that effect may be given to both; and in those cases, if effect cannot be given to both, the special provision shall prevail and shall be construed as an exception to the general provision."

The plaintiff contends that because § 42–99–21 of the Convention Center Act does not refer to the State Purchases Act, it cannot be interpreted as an exception to the more specific language in § 42–99–20 of the Convention Center Act, which makes the State Purchases Act apply to defendant.

We conclude that plaintiff's argument in this respect is entirely without merit. Facially, § 42–99–21 of the Convention Cen-

ter Act is in conflict with the State Purchases Act, insofar as it exempts from the State Purchases Act's mandates contracts for the acquisition of land and improvements on land and for the construction of buildings and improvements. However, we are not persuaded that the statutory provisions "are so diametrically opposed to each other as to require the former to give way to the latter." *Marques v. Pawtucket Mutual Insurance Co.*, 915 A.2d 745, 748 (R.I.2007).

Rather, the two acts can be perfectly harmonized "without doing violence to logic or language" by reading § 42–99–21 of the Convention Center Act as an exception to the general requirement of both acts that the State Purchases Act applies to contracts that defendant entered into. *Id.* Furthermore, § 42–99–20 of the Convention Center Act anticipates such a conflict and plainly eliminates confusion by providing that defendant is subject to the State Purchases Act "to the extent that those provisions are not inconsistent with the provisions of this chapter."

The defendant cannot be held liable for conduct that violates a law that it is not obliged to follow. Therefore, the motion justice properly dismissed counts 1, 2, and 3 of plaintiff's complaint, all of which are based exclusively on violations of the State Purchases Act.[1]

### 2

### Common Law Claims

The plaintiff next contends that count 4 of its complaint should survive because it states a claim upon which relief may be granted insofar as it alleges a violation of the common law requirements governing

---

1. The defendant argues alternatively that the motion justice appropriately dismissed plaintiff's complaint because plaintiff failed to exhaust its administrative remedies before filing its complaint. Although G.L.1956 § 37–2–52(a) of the State Purchases Act requires ag-

grieved bidders to first file a protest with the chief purchasing officer, because we conclude that the State Purchases Act does not apply to defendant's procurement of construction contracts, we need not address this contention.

public procurement as set forth in *Gilbane Building Co. v. Board of Trustees of State Colleges,* 107 R.I. 295, 267 A.2d 396 (1970).

In addressing defendant's argument that count 4 fails to state a claim upon which relief may be granted, the motion justice concluded that plaintiff's complaint could be read narrowly or broadly. According to the motion justice, under a narrow interpretation, the language in plaintiff's complaint appeared to allege only that defendant's failure to *exclude* certain firms from bidding was a palpable abuse of discretion. She further found that under a more expansive reading, the language in plaintiff's complaint could be interpreted as alleging that defendant's *award* of the contracts to firms that participated in the feasibility study was a palpable abuse of discretion. The motion justice ruled that under the narrower reading, plaintiff's complaint failed to state a claim upon which relief may be granted. She declined, however, to rule on whether the more expansive interpretation gave rise to a cognizable claim, dismissing it instead on the basis of standing.

Unlike the motion justice, this Court fails to see how count 4 can be interpreted as making out a claim that defendant's *award* of the contracts to firms that participated in the feasibility study violated the common law, even under the most expansive reading. Count 4 of plaintiff's complaint plainly alleges that the three firms that participated in the feasibility study had a substantial competitive advantage and that defendant's failure to exclude these firms from bidding on the Design or Construction RFP was a palpable abuse of discretion. Although we remain cognizant of this Court's liberal pleading requirements, nothing in count 4 of plaintiff's complaint suggests that plaintiff is challenging defendant's actual award of the project. The only reasonable interpretation of this count is that defendant's failure to exclude the three firms that participated in the feasibility study from bidding on either project violated Rhode Island common law.

■ To support its contention that defendant's failure to exclude the three firms that participated in the feasibility study from bidding on either project violated Rhode Island common law, plaintiff cites only this Court's opinion in *Gilbane Building Co.* In *Gilbane* this Court held that

"[i]n the absence of any legislative requirement pertaining to competitive bidding, it is the duty of the appropriate public officials to act honestly and in good faith *as they determine which bidder would best serve the public interest.* The judiciary will interfere with an award only when it is shown that an officer or officers *charged with the duty of making a decision* has acted corruptly or in bad faith, or so unreasonably or so arbitrarily as to be guilty of a palpable abuse of discretion." *Gilbane Building Co.,* 107 R.I. at 299–300, 267 A.2d at 399 (Emphases added.).

This language alone is insufficient to create a foundation for a cause of action for defendant's failure to exclude the three firms from bidding on the project. As the motion justice properly found, Rhode Island law does not require public agencies to exclude classes of prospective bidders from competing for a bid. Nor does Rhode Island law hold that a public agency's failure to exclude certain bidders constitute, as a matter of law, a palpable abuse of discretion. Therefore, the motion justice properly dismissed count 4 of plaintiff's complaint for failing to state a claim upon which relief may be granted.

**3**

### Article 3, Section 7, of the Rhode Island Constitution

■ Finally, plaintiff argues that the motion justice erred in dismissing count 5

of its complaint. In count 5, plaintiff alleged that defendant's conduct violated article 3, section 7, of the Rhode Island Constitution. That section provides:

"The people of the State of Rhode Island believe that public officials and employees must adhere to the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for private gain or advantage. Such persons shall hold their positions during good behavior." R.I. Const. art. 3, sec. 7.

According to plaintiff, defendant's failure to disqualify the three firms that took part in the feasibility study from competing for the design and construction contracts violated this constitutional provision.

The constitutional provision that plaintiff claims to be aggrieved of must be self-executing, a necessary precondition to plaintiff's claim. *See Smiler v. Napolitano*, 911 A.2d 1035, 1039 n. 5 (R.I.2006). Our review of the language set forth in article 3, section 7, reveals that it is not a self-executing provision.

This Court has set forth the relevant test to determine whether a constitutional provision is self-executing. We have held that

" '[a] constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which

those principles may be given the force of law.' " *Bandoni v. State*, 715 A.2d 580, 587 (R.I.1998) (quoting *Davis v. Burke*, 179 U.S. 399, 403, 21 S.Ct. 210, 45 L.Ed. 249 (1900)).

Applying this principle, we conclude that although article 3, section 7, articulates ethical principles that public officials and employees should adhere to, those provisions are aspirational in nature, and the constitutional provision does not set forth rules that give those principles the force of law. Rather, "section 7 casts light upon the scope of the authority and duties of the ethics commission by setting forth the expectations of the people of this state concerning the standards of ethical conduct that should guide and inform the actions of public officials." *In re Advisory Opinion to the Governor*, 732 A.2d 55, 58 (R.I.1999). Furthermore, although article 3, section 7, does not itself direct the Legislature to take further action to give this provision the force of law, article 15, section 4, of the Rhode Island Constitution requires the Legislature to "adopt implementing legislation for [a]rticle [3], [s]ections 7 and 8." [2]

Because article 3, section 7, announces "a laudable principle and not a workable rule of law," we hold that it is not a self-executing constitutional provision. *Smiler*, 911 A.2d at 1039 n. 5. Therefore, the motion justice properly dismissed this count of the plaintiff's complaint because it does not give rise to a private cause of action.

### Conclusion

For the foregoing reasons, we affirm the motion justice's decision. The record shall be remanded to the Superior Court.

---

**2.** In accordance with this directive, the Legislature enacted a Code of Ethics, codified in

G.L.1956 chapter 14 of title 36.