# United States Court of Appeals
## For the First Circuit

No. 12-1600

PAUL F. SENRA,

Plaintiff, Appellant,

v.

THE TOWN OF SMITHFIELD; DENNIS FINLAY, individually and in his official capacity; PETER SCORPIO, individually and in his official capacity; SUSAN PILKINGTON in her official capacity,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

Before

Lynch, Chief Judge,
Howard, Circuit Judge,
and Casper,[*] District Judge.

Keven A. McKenna for appellant.
Marc DeSisto, with whom Edmund L. Alves, Jr., Joseph Cavanagh III, DeSisto Law and Blish & Cavanagh, LLC were on brief, for appellee.

May 3, 2013

---

[*] of the District of Massachusetts, sitting by designation.

**CASPER, District Judge**.  Appellant Paul Senra ("Senra"), a former probationary public employee of the Town of Smithfield, Rhode Island ("Town"), alleges that he received insufficient procedural due process in violation of the Fourteenth Amendment in relation to the termination of his employment, and additionally that the Town violated art. III, § 7 of the Rhode Island Constitution, and the Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-3, when it fired him.  The district court granted summary judgment on all counts against Senra.  For the reasons given below, after de novo review, we affirm.

## I.  Facts & Background

### A.

Appellant Senra was hired by the Town as a Deputy Building Official on March 25, 2008.  The Town hired Senra on a probationary basis, and on the condition that Senra obtain his Building Official certification ("certification") from the State of Rhode Island within one year of being hired.  To obtain the certification, Senra had to pass two building code examinations.

Senra's status as a probationary employee initially lasted six months.  When that time had elapsed and Senra had not obtained the required certification, the Town Manager extended Senra's probation for three months.  After that time elapsed, and Senra still had not obtained the certification, the Town Manager extended Senra's probation for another three months.  By January

-2-

2009, it was clear to Town administrators that Senra was unlikely to obtain the certification within a year of his hiring date. On January 12, 2009 the Town Manager, the Town Building Official and the Town Human Resources Director met with Senra to address the problem. At that meeting, Senra agreed to accept a timetable for his passing the required examinations, and the Town Manager agreed to give Senra until March 31, 2010 to obtain the certification.[1]

Senra's timetable required him to pass the first examination by April 15, 2009 and to pass the second by August 15, 2009. Senra did not meet these requirements. By April 15, 2009, he had not signed up to take the first examination. He took but failed the first examination on April 25, 2009, and after that took no more tests. Despite this, the Town extended Senra's probationary status for two months in June 2009, and then again for two months in September 2009.

One week before his probationary status was set to expire, the Town Manager on November 10, 2009 met with Senra and advised Senra that he was going to be terminated. The Town placed Senra on administrative leave until November 16, 2009 to give him time to consult with a union representative. On that date, Senra and the union business agent appeared at a hearing before the Town

---

[1] Despite the Town Manager's agreement to give Senra over a year to complete the certification, the Town continued to extend Senra's probationary status for two or three months at a time.

Manager. Both Senra and the agent spoke at the meeting. At the conclusion of the meeting, the Town Manager terminated Senra.

Senra challenged his termination by filing a grievance through his union against the Town. An arbitrator heard this grievance on January 27, 2012 and issued a decision on April 30, 2012 finding that the Town did not have just cause to terminate Senra on November 16, 2009 only to the extent that it did not allow him until March 31, 2010 to obtain the certification, as had been previously agreed by the Town Manager and Senra. Accordingly, the arbitrator reinstated Senra for that equivalent time. At the end of his reinstatement, Senra had still not obtained the certification and was again terminated.

B.

After Senra requested arbitration but prior to the arbitration hearing, Senra filed a complaint in the Rhode Island Superior Court on January 26, 2011 against the Town, its Town Manager, its Building Official, and its Human Resources Director (collectively, "Defendants"). On February 17, 2011, the Defendants removed the case to federal court. Senra, in his complaint and again on appeal, alleged that he was improperly terminated because (1) he received constitutionally inadequate procedural due process with respect to his termination; (2) he was entitled to "hold [his] position[] during good behavior" and so qualified, R.I. Const. art. III, § 7; and that (3) he was protected from termination under the

-4-

Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-3.[2] Specifically on this third point, Senra alleged that he was fired not because of his failure to obtain the certification, but because he had uncovered allegedly illegal behavior by the Town's Building Official.

Approximately one year after the case was removed, and after seven months of discovery, the Defendants moved for summary judgment on all claims. Senra then moved for partial summary judgment on his procedural due process and state constitutional claims. After a hearing, a district judge, ruling from the bench, granted the Defendants' motion for summary judgment on all counts and denied Senra's motion. Senra now appeals these rulings and further argues that the district court erred by exercising supplemental jurisdiction over his state claims after dismissing Senra's only federal claim.

## II. Analysis

We review the district court's grant of summary judgment de novo, Ayala-Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 30 (1st Cir. 2012), drawing all reasonable inferences in the

---

[2] Senra alleged other violations in his complaint that are not properly presented on appeal. Issues unaddressed on appeal or "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Williams, 630 F.3d 44, 50 (1st Cir. 2010) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)).

nonmovant's favor, <u>Lockridge</u> v. <u>Univ. of Me. Sys.</u>, 597 F.3d 464, 468 (1st Cir. 2010).

A.

Senra makes two arguments as to why he has not received constitutionally adequate procedural due process.  First, Senra argues that the post-termination arbitration was not a procedurally adequate mechanism because the arbitrator could not address Senra's constitutional and statutory claims.  Second, Senra argues that he was due a mandated hearing before the Town Counsel.

1.

To maintain a procedural due process claim, a plaintiff must allege "that [the plaintiff] was deprived of constitutionally protected property because of defendants' actions, and that the deprivation occurred without due process of law." <u>Rumford Pharm., Inc.</u> v. <u>City of East Providence</u>, 970 F.2d 996, 999 (1st Cir. 1992). To assert such a claim "arising out of the termination of his employment, a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule, or contract, that he will continue to be employed." <u>Wojcik</u> v. <u>Mass. State Lottery Comm'n</u>, 300 F.3d 92, 101 (1st Cir. 2002) (citing <u>Perkins</u> v. <u>Bd. of Dirs. of Sch. Admin. Dist. No. 13</u>, 686 F.2d 49,

51 (1st Cir. 1982)).  We will assume that this showing has been made for the purposes of resolving the due process claim.[3]

"The employee must also demonstrate that he was deprived of that property interest without the minimum amount of process that was due under the Constitution [including] 'some kind of hearing' and 'some pretermination opportunity to respond.'"  Id. (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985)); see also Mard v. Town of Amherst, 350 F.3d 184, 193 (1st Cir. 2003).  Pre-termination and post-termination proceedings are not evaluated for constitutional adequacy in isolation from each other; a reviewing court studies the totality of the process received in light of the factual record to determine if the procedural due process was sufficient.  See Loudermill, 470 U.S. at 547 n.12 (noting that "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures"); Wojcik, 300 F.3d at 102 (considering both pre-termination and post-termination procedures when evaluating whether plaintiff was provided with "constitutionally adequate procedural safeguards"); Rumford Pharm., Inc., 970 F.2d at 999 (considering whether "Rhode Island law . . . provide[s] constitutionally adequate

---

[3] The parties do not address whether Senra had a protected property interest in his employment when he was terminated.  Cf. Wojcik, 300 F.3d at 102 (noting that a claim of a protected property interest is decided under state law).  The district court assumed for the purposes of its ruling that Senra was a permanent employee of the Town when he was terminated.

-7-

predeprivation and postdeprivation remedies"); see also Hadfield v. McDonough, 407 F.3d 11, 21 (1st Cir. 2005) (finding that a post-deprivation remedy was sufficient to address "any [pre-]deprivation of process . . . caused by random and unauthorized conduct by the due process defendants"); Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996) (same).

Here, Senra challenges only the constitutional adequacy of the post-termination hearing, arguing that a defect there would render inadequate the entire procedural due process he received. We find Senra's attack on his post-termination arbitration to be without merit. But even so, if Senra had raised a valid defect in his post-termination hearing, we would look to the entire pre- and post-termination proceedings to determine if the procedural due process he received was sufficient.

2.

As an initial matter, we have previously indicated that an arbitration hearing can be an appropriate mechanism to conduct a post-termination hearing. Wojcik, 300 F.3d at 102. However, Senra argues here that the defect in his post-termination arbitration was that the arbitrator could not resolve Senra's allegations that he enjoyed protections afforded by the Rhode Island Constitution and the Whistleblower statute.[4]

---

[4] It is not clear whether Senra presented these claims to the arbitrator and he asserts in part that the arbitrator was not jurisdictionally capable of resolving said claims. Regardless, our

-8-

A termination proceeding does not need to address all possible claims that an employee may bring against his former employer to satisfy the Constitution's procedural due process requirements. Writing about pre-termination proceedings, we have observed that "a termination hearing is not a court of law." Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st. Cir. 2008). That observation holds true for post-termination hearings, which may be limited in scope to address the asserted basis for an employee's termination. Here, the Town asserted an objective basis for terminating Senra, which is that Senra repeatedly failed to obtain the required certification. Procedural due process is satisfied where Senra was given "a meaningful opportunity to respond" to the Town's explanation for his termination. Id.

Even if the arbitrator could not or did not consider whether the Town had violated the Rhode Island Constitution or the Whistleblower statute in firing Senra, a post-termination arbitration only need address the asserted basis for the employee's termination and, if the opportunity had not already been provided prior to termination, give the employee the ability to provide his side of the story to a decision maker. Cf. id. (noting the requirements that a pre-termination hearing provide notice, an explanation of the evidence and an opportunity to respond). Here,

---

analysis is not affected where the arbitrator clearly considered the Town's reason for dismissing Senra to be the failure to obtain the certification.

-9-

Senra enjoyed a full arbitration hearing where he was represented by counsel and was permitted to put on evidence before a neutral arbiter. Senra could further seek a remedy for the alleged statutory and constitutional violations in court, and in fact here he did so by filing the present suit even before the arbitration began. Cf. González-Droz v. González-Colón, 660 F.3d 1, 14 (1st Cir. 2011) (observing that "[a]lthough the plaintiff implies that he would have challenged the constitutionality of the Regulation at the hearing [before the Board of Medical Examiners], that is a question for adjudication by the courts").

3.

Senra further argues that his procedural due process rights would have been satisfied had a post-termination hearing been held before the Town Counsel, allegedly pursuant to the Town charter and bylaws.[5] However, the Town Counsel surely had no more power than the arbitrator to address Senra's statutory and constitutional claims. At oral argument, Senra's counsel suggested that the difference in decision makers itself was the source of the procedural violation, but on this record we see no reason why this would be so. Senra also did not explain how the remedies that could have been granted by the Town Counsel or by the arbitrator were different. Here in fact, we observe that after the district

---

[5] The Town charter and bylaws are not in the record, but Defendants do not dispute Senra's characterization of their requirements.

-10-

court had granted summary judgment in favor of the Defendants, the arbitrator issued his decision reinstating Senra into his job for over four months and that the arbitrator considered but declined to award back pay or benefits.

But more importantly, "the federal Due Process Clause does not incorporate the particular procedural structures enacted by state or local governments." Chmielinski, 513 F.3d at 316 n.5 (quoting Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10 (1st Cir. 2003)). Claims "involving state procedural guarantees that are above and beyond constitutional due process requirements, are not properly before us." O'Neill v. Baker, 210 F.3d 41, 49 n.9 (1st Cir. 2000). Such claims, "should be pursued, if at all, under [state] law." Torres-Rosado, 335 F.3d at 10; cf. Loudermill, 470 U.S. at 541 (observing that "once it is determined that the Due Process Clause applies, the question remains what process is due. The answer to that question is not to be found in [a state] statute").

Here we review in toto whether the procedural due process actually received by Senra was adequate using a constitutional benchmark. For the reasons given above, we conclude that the procedural due process given to Senra, which included a pre-deprivation hearing with notice and union representation at the hearing, where both the representative and Senra spoke, and the post-termination arbitration proceeding, where Senra was

-11-

represented by counsel and was able to participate and to present evidence to a neutral arbiter, satisfied Senra's rights to procedural due process.

B.

Senra also contends that the district court erred by exercising its discretion to reach and resolve the state law claims after ruling against Senra on the sole federal claim. Senra's argument is that the district court's actions violated principles of comity and judicial economy. As described below, we find that the district court acted within its discretion. Because we so hold, we then proceed to review de novo the district court's disposition of Senra's state law claims.

1.

A federal court may exercise supplemental jurisdiction over state law claims that "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. §§ 1367(a). "[T]he termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction, but, rather, sets the stage for an exercise of the court's informed discretion." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996); see also Delgado v. Pawtucket Police Dept., 668 F.3d 42, 48 (1st Cir. 2012) (finding that "[t]he district court's decision here to retain jurisdiction over the

plaintiffs' state law claims after dismissing the federal claims fell squarely within the realm of its discretion").  In deciding whether to exercise supplemental jurisdiction in such a circumstance, a judge "must take into account concerns of comity, judicial economy, convenience, fairness, and the like."  Roche, 81 F.3d at 257; see Redondo Constr. Corp. v. Izquierdo, 662 F.3d 42, 49 (1st Cir. 2011) (noting that "the proper inquiry is 'pragmatic and case-specific'" (quoting Roche, 81 F.3d at 257)).

Here, the parties had been actively litigating the matter for more than a year, and a seven-month window for discovery had closed well before the district court considered the state law claims.  The court considered the issues of comity and judicial economy, and found that the questions of state law were not so novel as to warrant the added time and expense inherent in a remand to state court.  Moreover, we note that Senra himself in his partial motion for summary judgment sought to have the district court resolve his state constitutional claim.  For all of these reasons, we cannot say that the district court abused its discretion by retaining jurisdiction over the state law claims.

2.

Senra's first state law claim is that his employment was protected under the provision of R.I. Const. art. III, § 7, which states in full:

Ethical conduct. -- The people of the state of Rhode Island believe that public officials and employees must adhere to

-13-

the highest standards of ethical conduct, respect the public trust and the rights of all persons, be open, accountable and responsive, avoid the appearance of impropriety and not use their position for private gain or advantage. Such persons shall hold their positions during good behavior.

The Supreme Court of Rhode Island has declared that "article 3, section 7, announces 'a laudable principle and not a workable rule of law,' [and has held] that it is not a self-executing constitutional provision." A.F. Lusi Constr., Inc. v. R.I. Convention Ctr. Auth., 934 A.2d 791, 798 (R.I. 2007) (quoting Smiler v. Napolitano, 911 A.2d 1035, 1039 n.5 (R.I. 2006)). Under Rhode Island law, "[a] constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." Id. (quoting Bandoni v. State, 715 A.2d 580, 587 (R.I. 1998)). In the A.F. Lusi case, the Supreme Court of Rhode Island, after quoting the entire section above, held that "although article 3, section 7, articulates ethical principles that public officials and employees should adhere to, those provisions are aspirational in nature, and the constitutional provision does not set forth rules that give those principles the force of law." Id.

Senra argues that because the A.F. Lusi court did not explicitly address the last sentence stating that "[s]uch persons

-14-

shall hold their positions during good behavior," the A.F. Lusi case's holding is properly limited to address only the first portion of that constitutional section. But the A.F. Lusi opinion recites the entire constitutional provision in its holding and does not make the distinction that Senra asks us to make. The intended scope of the A.F. Lusi case's holding is reinforced by a closer examination of the constitutional and statutory provisions on which the A.F. Lusi opinion relies.

As the A.F. Lusi court observed, "although article 3, section 7, does not itself direct the Legislature to take further action to give this provision the force of law, article 15, section 4, of the Rhode Island Constitution requires the Legislature to adopt implementing legislation for [a]rticle [3], [s]ections 7 and 8. . . . [and] [i]n accordance with this directive, the Legislature enacted a Code of Ethics, codified in G.L. 1956 chapter 14 of title 36." A.F. Lusi Constr., Inc., 934 A.2d at 798 & n.2. That chapter in turn established an ethics commission, R.I. Gen. Laws § 36-14-1, and ethics code that applies to, among others, "[e]mployees of state and local government," R.I. Gen. Laws §§ 36-14-4, 36-14-2(4). Given that a separate constitutional provision explicitly directs the Legislature to "adopt implementing legislation for [a]rticle [3], [s]ections 7," and that such legislation exists in detailed form, we cannot say that the district court erred in granting

summary judgment in favor of Defendants by holding that Senra did not have a private right of action under this provision.

3.

Senra's second state law claim is that he was protected from termination under the Rhode Island Whistleblowers' Protection Act, R.I. Gen. Laws § 28-50-3. That statute provides that "[a]n employer shall not discharge . . . an employee . . . [b]ecause the employee . . . reports or is about to report to a public body . . . a violation [of a law or regulation] which the employee knows or reasonably believes has occurred or is about to occur . . . ." R.I. Gen. Laws § 28-50-3. A plaintiff bringing a claim under this statute may not base the claim on "pure speculation." Malone v. Lockheed Martin Corp., 610 F.3d 16, 23 (1st Cir. 2010).

The district court noted that the evidence in this case was "very lean." We agree, where Senra relies on no evidence to support his Whistleblower claim. Senra did not provide an affidavit and points only to allegations contained in an unverified second amended complaint to support his claim. "Summary judgment motions are decided on the record as it stands, not on the pleadings . . . . Consequently, a plaintiff who aspires to ward off . . . summary judgment must produce enough proof to enable her case to get to a jury." Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001).

The district court properly granted summary judgment in favor of the Defendants.[6]

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court's decision granting Defendants' motion for summary judgment and denying Senra's motion for partial summary judgment.

**-Concurring Opinion Follows-**

---

[6] Because we decide on this ground, we do not need to consider the district court's alternate holding under the doctrine of "election of remedies." See State, Dept. of Envtl. Mgmt. v. State, Labor Relations Bd., 799 A.2d 274, 277 (R.I. 2002) (noting that "[t]he doctrine of election of remedies is one that is grounded in equity and is designed to mitigate unfairness to both parties by preventing double redress for a single wrong"). As an initial matter, Senra does not challenge this finding on appeal and thus any argument that the district court erred as to this issue is waived. DeCaro v. Hasbro, Inc., 580 F.3d 55, 64 (1st Cir. 2009) (observing the "common ground that contentions not advanced in an appellant's opening brief are deemed waived"). It is not clear which matters were asserted or what remedies were requested before the arbitrator, beyond his consideration of the Town's stated reasons for dismissing Senra, and we need not reach whether Senra in his arbitration "sought essentially the same remedy as the complaint later filed in Superior Court." Cipolla v. R.I. Coll., Bd. of Governors for Higher Educ., 742 A.2d 277, 281 (R.I. 1999).

**HOWARD, Circuit Judge, concurring in part and concurring in the judgment.** I concur with the bulk of this excellent opinion and join in the judgment of the majority without hesitation. I write separately, however, because I am uncertain about the majority's analysis of the issue of Rhode Island law discussed in Part B.2.

The Rhode Island Supreme Court unquestionably used broad language in interpreting the ethical conduct provision of the state's constitution. See A.F. Lusi Constr., Inc. v. R.I. Convention Ctr. Auth., 934 A.2d 791, 798 (R.I. 2007) (announcing that "article 3, section 7 . . . is not a self-executing constitutional provision"). As the majority implicitly acknowledges, however, A.F. Lusi concerned only an alleged violation of the first clause of the ethical conduct provision, which provides, inter alia, that "public officials and employees must . . . avoid the appearance of impropriety." R.I. Const. art. III, § 7, cl. 1. See A.F. Lusi Constr., Inc., 934 A.2d at 794. A.F. Lusi did not involve the second clause of the ethical conduct provision -- the clause at issue here, which provides that "[s]uch persons [i.e., public officials and employees] shall hold their positions during good behavior." R.I. Const. art. III, § 7, cl. 2. Accordingly, whether the Rhode Island Supreme Court intended its pronouncement to extend to the independent "good behavior" clause

-18-

is at best unclear.  In any event, even if that court did so intend, its treatment of the clause is dicta.

Regardless of whether the "good behavior" clause is self-executing, however, Senra failed to satisfy the requirements of his job by not obtaining a mandatory building official certification, as the majority explains.  Even when the town accommodated him and extended the deadline by which he was to obtain the certification, he failed to take the necessary examinations at the agreed-upon times; indeed, he registered for the first examination late and failed to register for the second examination entirely.  Senra has presented no substantive argument as to how he remained of good behavior despite these repeated failings; he simply asserts, without support, that "[f]ailure to take a private exam . . . was not evidence of 'bad behavior.'"  Accordingly, even if the "good behavior" clause is self-executing, Senra has not shown that the Town violated article III, section 7, clause 2.