**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 16-1172

WARREN WEST,

Plaintiff, Appellant,

v.

THOMAS HOOVER, in his capacity as Town Manager for the Town of
Coventry; GARY P. COTE, in his capacity as a Town Council member
for the Town of Coventry; KERRY L. MCGEE, in her capacity as a
Town Council member for the Town of Coventry; CARL L. MATTSON,
in his capacity as a Town Council member for the Town of
Coventry; PATRICK ROGERS; JOSEPH LARISA; ROBERT THIBEAULT, in
his capacity as Finance Director for the Town of Coventry,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND
[Hon. William E. Smith, U.S. District Judge]

Before

Thompson, Selya, and Barron,
Circuit Judges.

Timothy A. Williamson and Williamson Law on brief for
appellant.
Nicholas Gorham, Dianne L. Izzo, and Gorham & Gorham, Inc. on
brief for appellees.

March 3, 2017

**BARRON**, **Circuit Judge**.  Plaintiff Warren West appeals from the District Court's grant of summary judgment to the defendants, certain officials of a Rhode Island town in their official capacities and individual defendants associated with the town.  West contends that the termination of his employment with the town violated his right to procedural due process under the Fourteenth Amendment of the United States Constitution.  We affirm.

## I.

We recount the following undisputed facts.  West served as the finance director of the Town of Coventry, Rhode Island (the "Town") from 2005 until his termination in 2011.  In 2010, he was suspended from that position because of allegations that, as the District Court summarized, he failed to ensure that the Town comply with Rhode Island's "maintenance of effort" law by "provid[ing] at least the same amount of local funds to [its] school system[] from year to year."

The Town provided West with the opportunity to participate in a pre-termination hearing.  Before that hearing, held on August 20, 2010, West received a copy of a report that had been prepared by a private auditor, Ernest Almonte, who was charged with investigating the allegations against West.  During the hearing, West -- with the assistance of counsel -- was given the opportunity to rebut the report's findings and conclusions.  Later

- 2 -

that day, West received notice that his employment had been terminated.

West also received an opportunity to participate in a five-day post-termination hearing before the Town's three-member Personnel Board. Two different attorneys -- Town Solicitors Patrick Rogers and Frederick Tobin -- served as hearing officers. The Board's responsibility was to advise the Town Manager, Thomas Hoover, as to whether West had been wrongfully terminated. Hoover retained ultimate authority over the decision. During this post-termination hearing, West had the opportunity to cross-examine the Town's two witnesses -- Almonte and Hoover -- and to call two witnesses of his own. West was not permitted to subpoena witnesses, but he was able to enter documents into evidence.

The Board upheld West's termination. West then filed suit in Rhode Island Superior Court. He brought a number of claims under both state and federal law, including one under 42 U.S.C. § 1983, in which he contended that the Town and certain of its officials had violated his Fourteenth Amendment right to procedural due process. The defendants removed the case to federal district court, which ultimately granted summary judgment to the defendants. This timely appeal followed.

## II.

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the

- 3 -

movant is entitled to judgment as a matter of law.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it has the potential of determining the outcome of the litigation." Id. (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)). Our review of the District Court's grant of summary judgment is de novo, drawing all inferences in favor of West as the nonmoving party. Id.

## A.

West first argues that the District Court erred in concluding that his seven-count complaint, brought pursuant to 42 U.S.C. § 1983, "reduce[d] . . . to one general claim -- that the Town violated [his] Fourteenth Amendment due process rights when it terminated his employment." West, however, provides no argument in support of the contention that the District Court was wrong to hold that he "waived" all other claims alleged in his complaint. Because West has "adverted to [that contention] in a perfunctory manner, unaccompanied by some effort at developed argumentation," we apply the familiar rule articulated in United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and "deem[]" that contention "waived."

## B.

West next argues that the District Court erred in holding that, as a matter of law, the process he received both before and

after his termination as finance director for the Town was constitutionally adequate.  As West concedes, the touchstone for allegations concerning procedural violations of the Fourteenth Amendment's Due Process Clause is not whether he was wrongfully terminated.  Rather, we look first to whether the employee was "deprived of [his] property interest without . . . 'some kind of hearing' and 'some pretermination opportunity to respond.'"  Senra v. Town of Smithfield, 715 F.3d 34, 38-39 (1st Cir. 2013) (quoting Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002)).  We look next to whether that initial "very limited hearing" was "followed by a more comprehensive post-termination hearing."  Gilbert v. Homar, 520 U.S. 924, 929 (1997).  We have explained that a hearing -- whether pre- or post-termination -- "'need not be elaborate' as long as an employee receives (1) 'oral or written notice of the charges against him,' (2) 'an explanation of the employer's evidence,' and (3) 'an opportunity to present his side of the story.'"  Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008) (quoting Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545-46 (1985)); Senra, 715 F.3d at 39 (holding that this "observation holds true for post-termination hearings, which may be limited in scope").

Moreover, in cases in which the employee is granted both a pre- and a post-termination hearing, we have explained that those "proceedings are not evaluated for constitutional adequacy in

- 5 -

isolation from each other." Senra, 715 F.3d at 39. Rather, "a reviewing court studies the totality of the process received in light of the factual record to determine if the procedural due process was sufficient." Id.

West concedes that, before his termination, he received notice "that he ha[d] been suspended with pay pending an investigation into . . . the maintenance of effort issue" more than six weeks before his pre-termination hearing. That is more than twice the two-and-a-half-week advance notice that we held constitutional in Cepero-Rivera v. Fagundo, 414 F.3d 124, 134 (1st Cir. 2005), and close to the eleven-and-a-half-week advance notice that we held constitutional in Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 10 (1st Cir. 2003).

In addition, as the District Court noted, there is no question that, a week before the pre-termination hearing, West received a "detailed account of why [the Town] was considering terminating his employment," and that the Town "forwarded West a copy of the Report that formed the primary basis for its decision." And, as West admits, he had the opportunity at that hearing to "provide[] the Defendants with a copy of his line by line opposition . . . during this meeting." Thus, as in Chmielinski, the record clearly shows that West was "aware that the [pre-termination] hearing concerned discipline, as he had been

suspended, and he appeared at the hearing with counsel and presented evidence on his own behalf."  513 F.3d at 316.

But West did not just have the opportunity to make his case at a pre-termination proceeding.  He also received post-termination process via a hearing that took place over five days.  During that post-termination hearing, as the District Court emphasized, and as West does not dispute, "West, through his counsel, extensively cross-examined both of the Town's witnesses," including Almonte and Hoover.  In addition, the record clearly shows that "West called two witnesses of his own, and submitted a number of exhibits to the Board."  We thus do not see how the District Court erred in concluding that the record shows that, as a matter of law, West "received far more than the minimum elements of procedural due process."  Torres-Rosado, 335 F.3d at 10.

## C.

In response, West contends that both his pre- and post-termination proceedings were a sham.  In this regard, he emphasizes the following facts that he alleges to be in dispute: (1) his termination letter was prepared "well in advance" of his pre-termination hearing; (2) he was terminated on the same day the pre-termination hearing was held; (3) he was not able to confront adverse witnesses during his pre-termination hearing; (4) new, politically motivated appointments to the Personnel Board presiding over his post-termination hearing were made in the month

prior to that hearing; (5) the hearing officer, Patrick Rogers, who presided over the first two days of his post-termination hearing, was also the Town Solicitor, and therefore had a role in the Town's investigation of West's alleged misconduct as finance director; (6) one of the members of the Personnel Board was appointed in violation of the Town's Home Rule Charter, and therefore should have been removed; and (7) Rogers, as hearing officer, failed to execute subpoenas West contends should have been issued. But even assuming, favorably to West, that each of these factual claims is true, none of them provides a basis for overturning the District Court's grant of summary judgment to the defendants. Farmers Ins. Exch., 632 F.3d at 782.

As to the first two factual issues that West raises, our case law is clear that even where a decision-maker makes the termination decision before the pre-termination hearing, and drafts a corresponding termination letter, "[t]here is no constitutional infirmity" as long as "the planned termination was subject to revision." O'Neill v. Baker, 210 F.3d 41, 49 (1st Cir. 2000). West, however, does not point to any evidence in the record suggesting that the relevant decision-maker -- Town Manager Hoover -- had decided in advance of the pre-termination hearing that nothing he heard there would have changed his mind.

As to West's contention that he was not able to confront adverse witnesses at his pre-termination hearing, we have

emphasized that a "termination hearing is not a court of law, and the same level of process is not required." Chmielinski, 513 F.3d at 316. And here, West acknowledges, he was able to "provide[] a line by line response" to the report summarizing the allegations against him. The rule articulated in Chmielinski, moreover, applies all the more when an employee is "entitled to some process after termination." Id. In that case, "the purpose of the [pre-]termination hearing is solely to serve as 'an initial check against mistaken decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Id. (quoting Loudermill, 470 U.S. at 545-46).

West next turns his attention to the new appointments made in the month before his post-termination hearing to the Town's Personnel Board. He contends that these appointments were made with political motivations and deprived him of a meaningful opportunity at his post-termination hearing before that Board to rebut the charges against him.

But West's evidence in this regard is merely that the Board's members -- two Republicans and one politically unaffiliated holdover member -- were "hand-picked" by Town Council Vice President Laura Flanagan. It is true that "a decisionmaker could be so utterly biased as to deprive an employee of . . . [the] error-correction ability" that is central to the procedural due

- 9 -

process guarantee. <u>Chmielinski</u>, 513 F.3d at 318. But here the District Court supportably concluded, on the basis of the summary judgment record before it, that West had shown nothing either suggesting that "Flanagan sought to create a politically oriented personnel board" or "connect[ing] the political makeup of the Council to his termination." West identifies no evidence in the record that shows that the District Court erred in this regard.

Fifth, West suggests that he did not receive a meaningful post-termination hearing because the officer presiding over the hearing, Patrick Rogers, was also employed as the Town Solicitor, and in that capacity had advised Town officials about their investigation into West. But, as the District Court emphasized and West does not dispute, Rogers was not a "decision-maker at either of his hearings." Rather, it was "Hoover and the Personnel Board, not Rogers, [who] ultimately decided West's fate." In any event, the District Court rightly pointed out that West's due process rights would not have been violated even if Hoover himself -- the official responsible for terminating West -- had participated in his post-termination hearing as a decision-maker. See <u>Chmielinski</u>, 513 F.3d at 318.[1]

---

[1] West separately contends that his procedural due process rights were violated based on a "potential . . . conflict of interest" between himself and Joseph Larisa, an attorney who was hired as "special counsel" for the Town, and to whom West spoke during the course of the Town's initial investigation of West's conduct as finance director. West contends that he believed that

Sixth, West contends that the Town's alleged violation of its own Charter on its own deprived him of the constitutional guarantee of procedural due process. The mere fact, however, that a state law may have been violated provides no basis for finding a federal constitutional violation. See Senra, 715 F.3d at 40 ("[T]he federal Due Process Clause does not incorporate the particular procedural structures enacted by state or local governments." (quoting Chmielinski, 513 F.3d at 316 n.5)).

Finally, the District Court was clearly correct to conclude that West was not entitled to subpoena witnesses. West points to no authority suggesting that the District Court's decision was incorrect on this point. And, as the District Court emphasized, West did have the opportunity to "confront[] each of the witnesses the Town presented against him, call[] to his defense individuals who would willingly testify for him, and present[]

---

Larisa was acting as his attorney when they spoke in that initial investigation. But, West points out, Larisa represented the Town at West's post-termination hearing. West, however, did not testify at the post-termination hearing, and he does not contend that the reason that he did not do so was because Larisa would have cross-examined him using allegedly privileged or confidential information. In addition, West points to no evidence that suggests that Larisa represented himself as West's attorney at any point during his involvement in the proceedings leading up to West's termination. Nor does West identify any other evidence showing that Larisa's involvement in West's post-termination hearing somehow tainted that hearing. Thus, while the District Court did not discuss this issue, we do not see how these allegations suffice to require us to vacate the District Court's grant of summary judgment.

documentary evidence to the Board in support of his case."  He was due no more.  See id. at 40 (holding that where an employee was "represented by counsel and was able to participate and to present evidence to a neutral arbitrator," the employee's "post-termination arbitration proceeding . . . satisfied [his] rights to procedural due process").

## III.

The judgment of the District Court is **affirmed**.